# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| LEROY WASHINGTON, on his own behalf, and on behalf of a Class of those similarly situated, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | CAUSE NO. 1:16-cv-02980-JMS-DML |
| THE MARION COUNTY PROSECUTOR, in his official capacity, | ) ) ) | COMPLAINT – CLASS ACTION |
| THE MAYOR OF THE CONSOLIDATED CITY OF INDIANAPOLIS/MARION COUNTY, in his official capacity, and | ) ) ) ) | |
| THE CHIEF OF THE INDIANAPOLIS METROPOLITAN POLICE DEPARTMENT, in his official capacity, | ) ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM IN SUPPORT OF
## PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Plaintiffs, by counsel, submit this Memorandum in support of their Motion for Summary Judgment.

## I.    INTRODUCTION

Civil forfeiture is a legal fiction that allows the government to take action against inanimate objects regardless of whether the owner is charged with a crime. *Serrano v. State*, 946 N.E.2d 1139, 1141 (Ind. 2011). Forfeiture traces its roots to Roman and medieval English law, but originated in Biblical and pre-Judeo-Christian practices. *Id.* and *Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 681 (1974). At common law, an object that caused the death of a King's subject, even if accidentally, was forfeited to the Crown as a deodand. *Calero-*

*Toledo*, 416 U.S. at 681.  The value of the object was then used for charitable purposes or to pay for masses for the dead man's soul. *Id.*  Over time, Courts began using forfeiture to obtain jurisdiction over property when violators of maritime law were overseas and could not be prosecuted. *Serrano*, 946 N.E.2d at 1141.  Today, all States allow for forfeiture and there are over four hundred federal forfeiture statutes. *Id.*  Randall Shepard, Former Chief Justice of the Indiana Supreme Court noted:

> An important feature of many of these statutes is characterization of the process as civil forfeiture under which (by contrast to criminal forfeiture) a property owner need not be found guilty of a crime—or even charged—to lose permanently their cash, car, home or other property. The relative ease of effecting such forfeiture and the disposition of the assets have become a matter of public note.

*Id.*

Across the State of Indiana, vehicles are seized every day by law enforcement.  Many of these vehicles belong to innocent owners, who allowed their vehicle to be used by a second individual without knowing that the second individual intended to commit a crime.  In some instances, the owner did not even give the second individual permission to use the vehicle.  After the second individual is arrested for criminal activity, the vehicle is often held by law enforcement for months, if not years.  Some owners have the financial ability to obtain an extra vehicle during this waiting period.  However, for many low-income individuals, the option of purchasing or leasing an extra vehicle is not a feasible financial option.  During this waiting period, the owner is still required to make loan payments on the vehicle in order to avoid defaulting on the loan and ruining their credit, despite their inability to use the vehicle. Depending on the circumstances of the owner's life, this seizure can have irreversible negative outcomes, including the loss of employment.

The loss of one's vehicle for a period of several months can not be brushed away as a minor bureaucratic inconvenience.

IC § 34-24-1-1 allows law enforcement to seize vehicles or other property that has been used in conjunction with certain illegal activities, many of which are drug crimes. IC § 34-24-1-2 allows property to be seized, regardless of who owns it, so long as the seizure is incident to a lawful arrest or search. No inquiry is made into whether the property owner was involved in or even aware of the illegal activity.[1] After property is seized, law enforcement can hold the property for up to 180 days without taking any action (or 90 days from the date of receiving written notice from the owner demanding return of the seized property). *See* IC § 34-24-1-3. In *Krimstock v. Kelly*, a delay of 25 days was found to be unconstitutional. 306 F.3d 40, 68-69 (2d Cir. 2002). During this 180 day (or 90 day) waiting period, the owner of the vehicle has no legal ability to challenge the seizure, as replevin is barred in Indiana. IC § 34-24-1-2(c). If the State decides to file a forfeiture claim against a vehicle within the 180 day (or 90 day) window, the vehicle is held indefinitely until the forfeiture case is resolved, which is often several additional months.

Indiana law does contain an "innocent owner" provision for vehicles. *$100 v. State*, 822 N.E.2d 1001, 1011 (Ind. Ct. App. 2005) (citing IC § 34-24-1-4(a)). Additionally, under Indiana law, even where the defendant is guilty of a crime, forfeiture of a vehicle requires that the

---

[1] There is one narrow exception in which the owner of the vehicle becomes relevant. Under IC § 34-24-1-1(e) the vehicle must belong to the defendant or defendant's spouse if (1) an individual has two operating while intoxicated convictions in the previous 5 years and the individual operates a vehicle while intoxicated, or (2) if an individual has two operating while intoxicated convictions in the previous 5 years and operates a vehicle with a suspended license. For all other vehicle seizures, no inquiry is made into who owns the vehicle. No inquiry is made where the seizure relates to dealing in or manufacturing cocaine or a narcotic drug, dealing in methamphetamine, dealing in a schedule I, II, or III controlled substance, dealing in a schedule IV controlled substance, dealing in a schedule V controlled substance, dealing in a counterfeit substance, possession of cocaine or a narcotic drug. possession of methamphetamine, dealing in paraphernalia, dealing in marijuana, hash oil, hashish, or salvia, dealing in a synthetic drug or synthetic drug lookalike substance, theft or conversion if the retail value is above $100, transportation of hazardous waste, transportation of a bomb or a weapon of mass destruction.

vehicle's involvement in illegal activity be more than "incidental or fortuitous." *Serrano,* 946 at

1143-44 (citing *Katner v. State*, 655 N.E.2d 345, 348-49 (Ind. 1995).  However, because replevin

is barred, there is no legal opportunity to address the issue of an "innocent owner" or "incidental

or fortuitous" use until the final forfeiture hearing.

IC § 34-24-1-2(a)(1) violates Due Process and the Indiana Constitution because it allows

law enforcement to hold the vehicle of an owner for several months without affording the owner

the right to a postseizure preforfeiture hearing to challenge the taking.  While this statute

implicates the Takings Clause and the guarantee against Unreasonable Seizures, appellate legal

analysis focuses primarily on the Due Process Clause.

The ability of the State to hold property for an extended period of time while

simultaneously preventing judicial intervention creates powerful leverage that can be used to

coerce innocent owners to buy back their own vehicles through a settlement agreement.

## II.     STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

The facts stated in plaintiff's complaint have been generally stipulated to by the parties.

[Filing No. 1 at 6-7; Filing No. 22 at 1.]

On September 21, 2016, Officer Rynard, a law enforcement officer with the Indianapolis

Metropolitan Police Department, was working within Marion County, Indiana when he stopped a

vehicle.  [Filing No. 1 at 6; Filing No. 22 at 1; Filing No 33 at 1.] The driver and owner of the

vehicle, Leroy Washington, was arrested and later charged with Resisting Law Enforcement, a

level 6 Felony; Dealing in Marijuana, a level 6 Felony; and Obstruction of Justice, a level 6

Felony. [Filing No. 1 at 6; Filing No. 22 at 1].  Officer Rynard had Leroy Washington's vehicle

towed and held for forfeiture, pursuant to IC § 34-24-1-2(a)(1). [Filing No. 1 at 7; Filing No. 22

at 1; Filing No 33 at 2].

On November 1, 2016, Leroy Washington made a demand for the return of his property, pursuant to IC § 34-24-1-3, both electronically and by US Mail. [Filing No. 1 at 7; Filing No. 22 at 1.]

On February 3, 2017, the defendants filed a motion to dismiss in this case stating that they would release Leroy Washington's vehicle. [Filing No. 24 at 2.]

169 vehicles were seized for forfeiture between November 2, 2016 and February 13, 2017. [Filing No. 33 at 3, 6-9.]

## III.    ARGUMENT

### A.    A Preliminary Injunction Should be Granted

#### 1.    Plaintiffs will prevail on the merits of their claims as IC § 34-24-1-2(a)(1) violates Due Process.

In 1993, the US Supreme Court analyzed Due Process and Forfeiture after a property owner argued that the government seizure of his 4-acre property without a pre-deprivation hearing violated Due Process. *United States v. James Daniel Good Real Prop.,* 510 U.S. 43, 46 (1993). In *Good*, the Court applied the *Mathews* factors and found that the seizure did violate Due Process. *Id.* 46, 53.[2]

In *Good*, police officers executed a search warrant at Good's home and found over 89 pounds of marijuana. *Id.* at 46. Good later pled guilty to promoting a harmful drug in the second degree. *Id.* After the criminal case was resolved, the United States sought forfeiture of the home and four-acre property alleging that the property had been used to commit or facilitate the commission of a federal drug offense. *Id.* After an *ex parte* proceeding, the Court found that the

---

[2] In *United States v. $8,850*, the Court used the *Barker v. Wingo* speedy trial test. 461 U.S. 555, 556 (1983). *$8850* is distinguishable from the present case in the sense that *$8850* (using *Barker*) focuses on when the final forfeiture hearing should occur where as *Krimstock* (using *Mathews*) focuses on whether a prompt post-seizure preforfeiture hearing is required prior to the final forfeiture hearing.

Government had established probable cause to believe Good's property was subject to forfeiture and a warrant was issued authorizing seizure of the property. *Id.* at 47. The State then seized the property without prior notice and without an adversarial hearing. *Id.* Good argued that the seizure deprived him of his property without Due Process of law. *Id.* In it's decision, the US Supreme Court identified two arguments the State had raised. *Id.* at 48. First, the State argued that only the 4th Amendment applied to forfeiture, because it served a law enforcement purpose. *Id.* The Court disagreed with this argument, finding that invocation of forfeiture does not create an exception to Due Process. *Id.* Second, the Government argued that the seizure of real property under the drug forfeiture laws justify an exception to the usual Due Process requirements. The Court stated that departures from Due Process are allowed only in "extraordinary situations." *Id.* at 53. The Court then went on to review the *Mathews* factors in order to determine whether forfeiture is an "extraordinary situation" that warranted departure from the general requirements of Due Process. *Mathews* balances the following three factors:

> (1) the private interest that will be affected by the official action,
> (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards, and
> (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldrige*, 424 U.S. 319, 335 (1976).

### a. Private interest that will be affected by the official action

In *Good,* the Court found that the seizure deprived Good of his ownership rights in the home. *Good,* 510 U.S. at 53-54. The Court noted that the right to maintain the home "is a private interest of historic and continuing importance." *Id.* The State argued that the taking was limited to the $900 a month that Good was making as profit by renting the home to a third party. *Id.* at

54. The Court disagreed with this argument, but also pointed out that even if the State's assertion was correct, the loss of rent alone implicates Due Process and can not be considered *de minimis. Id.* The Court found that the private interests at stake "weigh heavily in the *Mathews* balance." *Id.* at 55.

The present case focuses on vehicles, which are distinguishable from a private residence being used as a rental property. Arguably, the use of one's vehicle is likely more important for daily life than a rental property held for the purpose of generating income. The seizure of a vehicle also affects a significant private interest. Many courts have found that an individual's interest in his vehicle is significant. "Automobiles occupy a central place in the lives of most Americans, providing access to jobs, schools, and recreation as well as to the daily necessities of life." *Coleman v. Watt*, 40 F.3d 255, 260-61 (8th Cir. 1994). "Americans in general love their cars. It is, however, particularly important, in the state which hosts the Indy 500 automobile race, to recognize that cars are sources of pride, status, and identity that transcend their objective attributes. We are extremely hesitant to countenance their casual violation." *Brown v. State*, 654 N.E.2d 77, 80 n.3 (Ind. 1995). *See also Perry v. McDonald*, 280 F.3d 159, 174 (2d Cir. 2001) (an individual's interest in driving a vehicle represents a due process concern); *See also Stypmann v. City & County of San Francisco*, 557 F.2d 1338, 1342-43 (9th Cir. 1977) (an owner has a "substantial" interest in "uninterrupted use of an automobile."); *See also* US. Supreme Court Justice Robert Jackson, *The Task of Maintaining Our Liberties: The Role of the Judiciary*, 39 A.B.A.J. 961, 963 (1953) ("My equal right to drive an automobile may be only a claim to use of property, but it concerns my personal freedom as well.").

In *Krimstock* (analyzing an almost identical statute) Judge Sotomayor stated:

> The particular importance of motor vehicles derives from their use
> as a mode of transportation and, for some, the means to earn a

> livelihood. An individual has an important interest in the possession of his or her motor vehicle, which is often his or her most valuable possession.

*Krimstock*, 306 F.3d at 61.

For most Hoosiers, the vehicle is now a necessity of daily life, and the owner of a vehicle has a high interest in the use of the vehicle. As a result, the private interest that will be affected by the official action is high and the first prong of *Mathews* weighs heavily in the Plaintiff's favor.

> **b.    The risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards**

> **i.    The risk of an erroneous deprivation**

In *Good*, the Court recognized that an *ex parte* proceeding offers almost no protection to the innocent owner as no evidence of innocent ownership is presented to the reviewing court. *Good,* 510 U.S. at 55. A full adversarial hearing is of particular importance when the Government has a financial stake in the outcome. *Id* at 55-56 (quoting *Harmelin v. Michigan*, 501 U.S. 957, 979, n.9, 115 L. Ed. 2d 836, 111 S. Ct. 2680 (1991) (opinion of SCALIA, J.) ("It makes sense to scrutinize governmental action more closely when the State stands to benefit."")).[3] The Court also emphasized that a delayed ruling in the innocent owner's favor still results in an erroneous deprivation for a significant period of time. *Good,* 510 U.S. at 56.

In the case of the owner whose vehicle is seized under Indiana law, the risk of erroneous deprivation is even higher than in *Good* or in *Calero-Toledo*. In both *Good* and *Calero-Toledo*,

---

[3] In Indiana, the law enforcement officials who make the seizure decision also stand to profit from the seizure. Although Article 8 § 2 of the Indiana Constitution requires that "all forfeiture" proceeds to go to the public school fund, law enforcement often retains a portion of the forfeiture plunder. For example, IMPD held an H2 Hummer instead of selling it for the public school fund. "The H2 would make a terrible patrol vehicle, and you can forget about using it in a chase. But this SUV is perfect for turning heads." Jeremy Brilliant, *IMPD adds H2 Hummer to Fleet*, Channel 13 WTHR News, Feb 24, 2011. Officer Chris Wilburn of the IMPD told reporters "I get a lot of stares from people. People are very interested...for one reason, why is a police officer driving this car?" *Id.*

the State held an *ex parte* probable cause hearing before the seizure occurred. In Indiana, when a vehicle is seized, instead of an *ex parte* proceeding (where there would at least be a neutral magistrate), Indiana leaves the seizure decision to the arresting officer. Once the arresting officer has made a decision to hold the vehicle for forfeiture, the vehicle owner is left with no legal opportunity to challenge the officer's decision. The problem of having the seizure decision made by the arresting officer, as opposed to a judicial officer, was recognized by the *Krimstock* Court (analyzing an almost identical statute), where Judge Sotomayor wrote:

> Neither the arresting officer's unreviewed probable cause determination nor a court's ruling in the distant future on the merits of the City's forfeiture claim can fully protect against an erroneous deprivation of a claimant's possessory interest as his or her vehicle stands idle in a police lot for months or years."

*Krimstock*, 306 F.3d at 62.[4]

To the extent that *Mathews* requires inquiry into "the procedures used," there appear to be no procedures used in Indiana, aside from the arresting officer's decision to hold the vehicle. Counsel would point out that even if criminal charges are filed and probable cause is found for the criminal charges, there is no review in the criminal court as to whether there is probable cause to believe that the property owner was involved in the crime or whether or not the charges being filed would be grounds for forfeiture. No inquiry is made into whether or not an innocent owner exists. Under Indiana law, a police officer who actually believes an innocent owner exists would still be allowed to seize the vehicle.[5] As a result, the risk of an erroneous deprivation in Indiana is high.[6]

---

[4] Despite the *Krimstock* Court's criticism of the lack of a hearing, the *Krimstock* court found that the second prong of *Mathews* weighed "narrow[ly] in the State's favor." *Id.* This conclusion appears to be at odds with the US Supreme Court's decision in *Good*, unless one believes the risk of erroneous deprivation is higher when made by a Judge in an *ex parte* hearing than when made by a police officer on the street.

[5] There is one narrow exception to this general rue, which was previously pointed out in footnote 1 of this document.

[6] The Horner's situation, also from Marion County, Indiana illustrates this point well. *Jeana M. Horner, et al. v. Terry R. Curry, Marion County Prosecutor's Office, et al.*, 49D06-1602-PL-0004804. The Horner's vehicles were

-9-

### ii. The probable value of additional or substitute procedural safeguards

There are additional or substitute procedural safeguards that could be used which would eliminate the most obvious wrongful seizures or at least minimize the hardship suffered to innocent owners that are not being used. Postseizure preforfeiture hearings are one example of a procedural safeguard that is not currently being used in Indiana. Alaska requires that a postseizure preforfeiture hearing be held "within days, if not hours." *F/V American Eagle v. State*, 620 P.2d 657, 667 (Alaska 1980). Many states, as well as the Federal government, allow a bond to be posted so that the owner of the vehicle can use the vehicle pending the forfeiture hearing. *See* 19 U.S.C § 1608 (Bond shall be set at "$5,000 or 10 percent of the value of the claimed property, whichever is lower, but not less than $250." *See also* Fla. Stat. § 932.703(2)(d) ("If the court determines that probable cause exists " . . . "the court shall order the property restrained by the least restrictive means to protect against disposal, waste, or continued illegal use of such property pending disposition of the forfeiture proceeding" . . . including "a bond or other adequate security."); *See also* Ariz. Rev. Stat. § 12-4306(G) ("An owner of property seized for forfeiture may obtain the release of the seized property by posting . . . a surety bond or cash.") *See also* Cal Health & Safety Code § 11492(c) (allowing for "a surety bond or undertaking to preserve the property interests of the interested parties"). Some states allow for the vehicle to be returned with the condition that the vehicle has a device installed that allows law enforcement to disable the vehicle. Minn. Stat. Ann. § 169A.63(subd. 3)(3).

---

seized after the Horner's son transported marijuana in his parent's vehicles. Kristine Guerra, *Indy officials face lawsuit alleging misuse of civil forfeiture funds*, Indystar, Feb. 2, 2016. There was no evidence that the Horner's were involved in their son's illegal activity. *Id.* Despite an absence of probable cause to believe the parent's were involved in the son's marijuana use, the Horner's vehicles were held for 9 months. *Id.* If a postseizure preforfeiture hearing had been required in the Horner's case, the Court would have likely found that the State had failed to present any evidence to show that the couple was engaged in wrongdoing and, as innocent owners, they would have been entitled to the return of their vehicles at a much earlier date.

Because postseizure preforfeiture hearings, the posting of bond, and the use of disabling devices would permit the vehicle owner to use the vehicle pending the forfeiture hearing, these additional safeguards would have high value.

In *Krimstock* (analyzing an almost identical statute), Judge Sotomayor wrote:

> Plaintiffs seek a determination only of whether *continued* retention of their vehicles by the City is valid and justified. Continued retention may be unjustified when other means of restraint would accomplish the City's goals. To ensure that the City's interest in forfeitable vehicles is protected, claimants could post bonds, or a court could issue a restraining order to prohibit the sale or destruction of the vehicle. The need to prevent forfeitable property from being sold or destroyed during the pendency of proceedings does not necessarily justify continued retention of all vehicles when other means of accomplishing those goals are available.

306 F.3d at 64-65.

Therefore, the probable value of additional safeguards is high.

Because the current "procedure" is limited to the arresting officer's decision to hold the vehicle, without any evaluation of whether the title holder has a connection with the crime; and because the most obvious wrongs could be eliminated or at least minimized by the use of additional safeguards, including postseizure preforfeiture hearings, the second prong of *Mathews* weighs heavily in the Plaintiff's favor.

   **c. The Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.**

   **i. The function involved.**

In *Good*, the Court pointed out that the government sometimes has a legitimate interest in seizing property to ensure that the property would not be "sold, destroyed, or used for further illegal activity" but also recognized that in many situations these interests could easily be achieved without permanently holding property. *Good,* 510 U.S. at 58. Where real property is

involved the risk of sale, destruction, or continued illegal use are substantially reduced. *Id.* at 59. However, vehicles are distinguishable from real property, so the facts of *Good* provide little guidance on this third prong. The Good Court[7] did, however, discuss and distinguish the *Good* facts from *Calero-Toledo*, where a yacht was seized. The *Good* Court recognized two functions which justified seizure in *Calero-Toledo*. First, immediate seizure was legally necessary at the time in order to maintain jurisdiction. *Good,* 510 U.S. at 57. Second, the yacht could have disappeared if warning had been given prior to seizure. *Id.* This first justification, that immediate seizure is legally necessary in order to maintain jurisdiction, is now moot, as the US Supreme Court has held that possession of an object during the entire course of the proceedings is no longer necessary to preserve jurisdiction. *Id.* (quoting *Republic Nat'l Bank of Miami v. United States*, 506 U.S. 80, 88-89, 121 L. Ed. 2d 474, 113 S. Ct. 554 (1992)).

The second justification, that the yacht might have disappeared, does have merit. However, a yacht in Puerto Rico, several miles away from international waters in 1974 is a poor analogy to a vehicle within the bounds of Indiana in 2017. Much of the justification the State relies on for holding vehicles until the completion of a forfeiture proceeding relies on the potential sale or destruction of the property in the interim. This argument, referred to in many decisions, cites back to *Calero-Toledo*. A yacht in Puerto Rico could very easily disappear into international waters and there is a very realistic possibility that the yacht could be sold in another Country. In all reality, in 1974, the *Calero-Toledo* yacht probably would have disappeared into international waters and never made its way back to the United States. It is necessary to ask whether the same risks exist for a vehicle in Indiana. The risk of sale is significantly reduced when the property in question is a vehicle located within the United States, especially when a

---

[7] Not to be confused with the *Bad* court.

hold could easily be placed on the title through the computer automated BMV, as is currently done for stolen vehicles.  It is also hypothetically possible that an individual might try to drive the car to either Mexico or Canada to be sold, but the same procedures that prevent stolen cars from being driven over the border and out of the country could be used to prevent vehicles with forfeiture holds from being removed from the country.  Regarding the argument that the vehicle might be destroyed, this argument is somewhat illogical.  If an owner destroys the vehicle, the owner is certain to lose all value of the vehicle.  When forfeiture occurs, settlement is possible (and is quiet common), which would be more advantageous than destruction.  Also, there is always a possibility that the owner will be successful against the State in a forfeiture case.  Even when a guilty owner is forced to decide whether to roll the dice in court, settle for a small amount, or destroy the vehicle, it is difficult to understand why any individual would choose to destroy the vehicle.  In all of the research this author has done, zero cases have been found where an owner choose to destroy his own property rather than settle or risk forfeiture.

Additionally, the mere right to a postseizure preforfeiture hearing does not guarantee return of the vehicle, just as the right to a bond review does not guarantee that a criminal defendant will be released from custody.

In *Krimstock* (analyzing an almost identical statute), Judge Sotomayor pointed out:

> Continued retention may be unjustified when other means of restraint would accomplish the City's goals. . . To ensure that the City's interest in forfeitable vehicles is protected, claimants could post bonds, or a court could issue a restraining order to prohibit the sale or destruction of the vehicle.

The continued reliance on *Calero-Toledo* ignores the realities of today's technologies and the obvious differences between a vehicle located in the state of Indiana in 2017 and a yacht located near international waters in Puerto Rico in 1974.  Additionally, the right to a postseizure

preforfeiture hearing would not necessarily guarantee release of a vehicle pending the final proceeding. As a result, there is little "function" created by a blanket prohibition preventing all individuals from receiving a postseizure preforfeiture hearing to determine whether continued impoundment of the vehicle is justified pending the final forfeiture hearing.

### ii. The fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Additional or substitute procedural safeguards will always impose some administrative burdens on the State. However, constitutional rights always impose some burdens on the government. These safeguards have been tested in other jurisdictions without any indication that these safeguards have been overly burdensome elsewhere. These seizures are initiated by government actors and the seizures are very burdensome for the aggrieved owners. Requiring a government attorney to attend a short 10 minute probable cause style hearing is a minimal burden. Additionally, paying to store a vehicle for several months is a financial burden that the State will be relieved of where there is no legal justification to hold the vehicle.

Because the argument that holding the vehicle is necessary to establish jurisdiction has been made moot by changes in case law, and because the risks associated with a yacht disappearing into international waters are much more real than the risk that a vehicle's owner will destroy his vehicle rather than reach a settlement with the State, and because additional safeguards have been used in other jurisdictions without a showing that these safeguards have been overly burdensome, and because the additional safeguards could actually save the taxpayers money by not requiring the government to pay for the cost of storing vehicles when there is no reason to believe the owner has engaged in wrongdoing, the Government's interest in not having

these additional safeguards is low, and the third prong of *Mathews* weighs heavily against the State and in the Plaintiff's favor.

### d. Conclusion Under *Mathews*

Because the private interests that will be affected by the official action are high, the risk of erroneous deprivation due to the lack of any meaningful procedures is high, and the Government's interest in avoiding these additional safeguards is low, Ind. Code § 34-24-1-2(a)(1) violates Due Process.

### 2. The other requirements for the grant of a Preliminary Injunction are met.

#### a. Plaintiffs are facing irreparable harm for which there is no adequate remedy at law.

The loss of one's vehicle for a period of several months is a harm. Even an innocent owner is not entitled to compensation for the taking of their vehicle through forfeiture under the Takings Clause because the seizure is not viewed as an act of eminent domain. *See Bennis v. Michigan,* 516 U.S. 442, 452-53 (1996). As previously mentioned,

> Neither the arresting officer's unreviewed probable cause determination nor a court's ruling in the distant future on the merits of the City's forfeiture claim can fully protect against an erroneous deprivation of a claimant's possessory interest as his or her vehicle stands idle in a police lot for months or years."

*Krimstock*, 306 F.3d at 62. Because the innocent owner is not compensated for the loss of their vehicle for several months and there is no other legal remedy available to the innocent owner, the harm is irreparable.

#### b. The balance of harm favors the Plaintiffs

"The more likely it is that [the moving party] will win its case on the merits, the less the balance of harms need weigh in its favor." *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S. of America, Inc.*, 549 F.3d 1079, 1100 (7th Cir. 2008) (internal citation omitted). Because

Plaintiff's are likely to prevail in the present case, there is a reduced need to address this balance.

However, this balance still weighs strongly in the favor of the plaintiffs.

The loss of a vehicle for several months can have catastrophic results for the owner and can not be brushed of as a buearocratic inconvenience. As mentioned earlier,

> The particular importance of motor vehicles derives from their use as a mode of transportation and, for some, the means to earn a livelihood. An individual has an important interest in the possession of his or her motor vehicle, which is often his or her most valuable possession.

*Krimstock*, 306 F.3d at 61.

> Automobiles occupy a central place in the lives of most Americans, providing access to jobs, schools, and recreation as well as to the daily necessities of life.

*Coleman v. Watt*, 40 F.3d 255, 260-61 (8th Cir. 1994)

> Americans in general love their cars. It is, however, particularly important, in the state which hosts the Indy 500 automobile race, to recognize that cars are sources of pride, status, and identity that transcend their objective attributes. We are extremely hesitant to countenance their casual violation.

*Brown v. State*, 654 N.E.2d 77, 80 n.3 (Ind. 1995). *See also Perry v. McDonald*, 280 F.3d 159, 174 (2d Cir. 2001) (an individual's interest in driving a vehicle represents a due process concern); *See also Stypmann v. City & County of San Francisco*, 557 F.2d 1338, 1342-43 (9th Cir. 1977) (an owner has a "substantial" interest in "uninterrupted use of an automobile."); *See also* US. Supreme Court Justice Robert Jackson, *The Task of Maintaining Our Liberties: The Role of the Judiciary*, 39 A.B.A.J. 961, 963 (1953) ("My equal right to drive an automobile may be only a claim to use of property, but it concerns my personal freedom as well.").

While the owner of the vehicle faces a very real and actual harm due to the loss of their vehicle, the harm from having to attend a short postseizure preforfeiture hearing is minimal and the risk of the loss of the vehicle is largely speculative, theoretical, and

unlikely to occur. As discussed earlier, the argument that the State should be able to hold a vehicle indefinitely, without a hearing, relies on the potential sale or destruction of the property in the interim. This argument cites back to *Calero*. The *Calero* yacht in Puerto Rico could very easily disappear into international waters and there is a very realistic possibility that the yacht could be sold in another Country. In all reality, in 1974, the *Calero* yacht probably would have disappeared into international waters and never made its way back to the United States. However, the same risks do not exist for a vehicle within the state of Indiana. The risk of sale is significantly reduced when the property in question is a vehicle located within the State, especially when a hold could easily be placed on the title through the computer automated BMV, as is currently done for stolen vehicles. It is also hypothetically possible that an individual might try to drive the car to either Mexico or Canada to be sold, but the same procedures that prevent stolen cars from being driven over the Mexican or Canadian border could be used to prevent vehicles with forfeiture holds from being removed from the United States. Regarding the argument that the vehicle might be destroyed, this argument is somewhat illogical. If an owner destroys the vehicle, the owner is certain to lose all value of the vehicle. When forfeiture occurs, settlement is possible (and is quiet common), which would be more advantageous than destruction. Also, there is always a possibility that the owner will be successful against the State in a forfeiture case. Even when a guilty owner is forced to decide whether to roll the dice in court, settle for a small amount, or destroy the vehicle, it is difficult to understand why any individual would choose to destroy the vehicle. In all of the research counsel has done, zero cases have been found where an owner choose to destroy his own property rather than settle or risk forfeiture.

Additionally, the mere right to a postseizure preforfeiture hearing does not guarantee return of the vehicle, just as the right to a bond review does not guarantee that a criminal defendant will be released from custody.

Because a postseizure preforfeiture hearing is a minimal burden, and the risk of loss of the vehicle after such a hearing is purely hypothetical and speculative, and the harm that the plaintiffs will suffer is very real and actual, the balance of harms favors the issuance of relief for the plaintiffs.

### c.    The public interest favors a preliminary injunction.

It is "always in the public interest to prevent violation of a party's constitutional rights." *Déjà vu of Nashville,* 274 F.3d at 400 (quoting *G & V Lounge, Inc. v. Michigan Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir. 1994) (internal quotation marks omitted)). Thus, the public interest is served by the enforcement of the Constitution and by the grant of a preliminary injunction.

### d.    The injunction should issue without bond.

The issuance of a preliminary injunction will not impose any monetary injuries on the named defendants.[8]

A preliminary injunction will not prevent the State from filing forfeiture claims or selling vehicles after gaining title to the vehicles.  Therefore, the State will not be at any financial disadvantage should a preliminary injunction be granted.

Additionally, in a situation where law enforcement believes that immediate seizure of the vehicle is necessary, law enforcement will still be able to take immediate control of a vehicle under IC § 34-24-1-2(a)(3), after an *ex parte* probable cause determination by a judicial officer.

---

[8] Additionally, because Article 8 § 2 of the Indiana Constitution requires that "all forfeitures" go to the "common school fund" the named defendants arguably should have no financial interest in forfeiture.

This is no more burdensome or time consuming than requesting a warrant for a blood draw.

Because the named defendants will suffer no injuries, no bond should be required. *See, e.g.*, *Doctor's Assocs., Inc. v. Stuart*, 85 F.3d 975, 985 (2d Cir. 1996).

Accordingly, this Court should enter a preliminary injunction, without bond, against the defendants preventing them from enforcing IC § 34-24-1-2(a)(1).

**B.     The preliminary injunction should be made permanent.**

Because the issues to be resolved are purely legal, and because the relief sought is non-monetary, there are no issues in the present case for a Jury to decide.  As a result, pursuant to Federal Rule 65(a)(2), Counsel requests that the Court consolidate it's decision regarding a preliminary injunction with the trial on the merits and enter a permanent injunction against the defendants preventing them from enforcing IC § 34-24-1-2(a)(1).

**C.     Class certification should be granted.**

The proposed class is defined as:

> All persons who own vehicles that are being held pursuant to IC § 34-24-1-2(a)(1) by the Marion County Prosecutors Office or the Consolidated City of Indianapolis/Marion County or the Indianapolis Metropolitan Police Department or any agent of the aforementioned Defendants.

Under the Federal Rules of Civil Procedure 23(a), four requirements must be met for class certification:

(1)     The class must be so numerous that the joinder of all members is impracticable;
(2)     There must be questions of law or fact common to the class;
(3)     The claims or defenses of the representative parties must be typical of the claims or defenses of the class; and
(4)     The representative parties must fairly and adequately protect the interests of the class.

Additionally, Federal Rule of Civil Procedure 23(b)(1)(B) is met in that prosecuting separate actions by or against individual class members would create a risk of adjudications with

respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications.

Additionally, Federal Rule of Civil Procedure 23(b)(2) is met in that the Defendant, at all times, has acted or refused to act in a manner generally applicable to the class.

Courts have also noted that there is an implied requirement that a "defined identifiable class exists." *Kincaid v. City of Fresno*, 244 F.R.D. 597, 600 (E.D. Cal. 2007)(citing *Harrington v. City of Albuquerque*, 222 F.R.D. 505, 509 (D. N.M. 2004).

All the requirements of Rule 23 are met in this case.

### 1.    As defined the class is identifiable.

In determining whether the proposed class is properly identified and identifiable, the key is "whether the description of the class is sufficiently definite to permit ascertainment of the class members." *Alliance to End Repression v. Rochford*, 565 F.2d 975, 977 (7th Cir. 1977). The class must be ascertainable by reference to objective criteria. *NOW v. Scheidler*, 172 F.R.D. 351, 357 (N.D. Ill. 1997). However,

> [i]n keeping with the liberal construction to be given to the rule, it has been held that the class does not have to be so ascertainable that every potential member can be identified at the commencement of the action. As one court has remarked: "To place such a burden on plaintiffs would seem harsh and unnecessary . . ." If the general outlines of the membership of the class are determinable at the outset of the litigation, a class will be deemed to exist.

7A Wright and Miller, *Federal Practice and Procedure* § 1760 (footnotes omitted).

To meet the requirement that the class be sufficiently definite with relation to objective criteria, a class cannot be made up of "membership contingent on any specific state of mind." *Oshana v. Coca-Cola Bottling Co.*, 225 F.R.D. 575, 580 (N.D. Ill 2005). "Membership should not be based on subjective determinations, such as the subjective state of mind of a prospective

class member, but rather on objective criteria that are administratively feasible for the Court to rely on to determine whether a particular individual is a member of the class." *Fears v. Wihelmina Model Agency, Inc.* No. 02 Civ. 4911 HB, 2003 WL 21659373, at *2 (S.D.N.Y. July 15, 2003).

This class is based on an objective criterion that is administratively feasible – the class members fall within the objective definition of all persons who own vehicles that are being held by the above named Defendants pursuant to IC § 34-24-1-2(a)(1).

    **2.**  **The Class is so numerous that joinder of all members is impracticable.**

"The numerosity requirement requires examination of the specific facts of each case and imposes no absolute limitations." *General Tel. Co. of the Northwest, Inc. v. EEOC,* 446 U.S. 318, 330 (1980). Moreover, "[t]he general rule encouraging liberal construction of civil rights class actions applies with equal force to the numerosity requirement of Rule 23(a)(1)." *Jones v. Diamond*, 519 F.2d 1090, 1100 (5th Cir. 1975). "[C]ourts have relaxed the numerosity requirement when the plaintiffs seek certification pursuant to Rule 23(b)(2) . . . where the class seeks injunctive and declaratory relief. *Bublitz v. E.I. du Pont de Nemours & Co.*, 202 F.R.D. 251, 256 (S.D. Iowa 2001). *See also, e.g., Grant v. Sullivan*, 131 F.R.D. 436, 446 (M.D. Pa. 1990). Thus, it is well established that a "relatively small group may form a class if other considerations make joinder impracticable." *See Gaspar v. Linvatec Corp.*, 167 F.R.D. 51, 56 (N.D. Ill 1996) (quoting *Patrykus v. Gomilla*, 121 F.R.D. 357, 361 (N.D. Ill. 1988)). Indeed, courts have routinely certified classes comprised of 20 or fewer members. In *Arkansas Education Association v. Board of Education*, 446 F.2d 763 (8th Cir. 1971), the court relied on a perceived "fear or reluctance to bring th[e] action on an individual basis" in order to certify a class consisting of only 20 teachers. *See Id.* at 765-766. In *Bublitz*, the court used a similar

rational to certify a class comprised of only 17 members. 202 F.R.D. at 256. There is likely a "fear or reluctance" on the members of the putative class in the present case in that some individuals may fear that suing the Prosecutors Office and the other named Defendants could be cause for later retaliation. Other courts have also certified relatively small classes. *See, e.g., Cypress v. Newport News Gen. & Nonsectarian Hosp. Ass'n*, 375 F.2d 648, 653 (4th Cir. 1967) (certifying a class of 18 members); *Rosario v. Cook County*, 101 F.R.D. 659, 661 (N.D. Ill 1983) (certifying a class of 20 members); *Manning v. Princeton Discount Consumer Co., Inc.*, 390 F. Supp. 320, 324 (E.D. Pa. 1975) (certifying a class of 14 members); *Dale Elecs., Inc. v. R.C.L. Elecs., Inc.*, 53 F.R.D. 531, 534-36 (D.N.H. 1971) (certifying a class of 13 members).

169 vehicles were seized for forfeiture by the defendants between November 2, 2016 and February 13, 2017. Counsel therefore concludes that the class is at least 168 persons.[9]

In assessing numerosity a court must consider not only the size of the class "but also factors such as 'the geographic diversity of the class members, the nature of the action, the size of each plaintiff's claims, judicial economy and the inconvenience of trying individual lawsuits, and the ability of the individual class members to institute individual lawsuits.'" *Agan v. Katzman & Korr, PA.*, 222 F.R.D. 692, 696 (S.D. Fla. 2004) (internal citation omitted). These factors point to a conclusion that numerosity is met here.

---

[9] In the discovery request, counsel requested, amongst other information, "the date of seizure, [and] the date of release." Counsel has not received release information for any vehicle other than Leroy Washington's vehicle. Counsel therefore concludes that the class is at least 168 persons. Counsel is still awaiting additional discovery concerning the number of vehicles that were already being held as of November 2, 2016. Counsel previously requested through interrogatories a list of vehicles "seized and/or held for forfeiture on or after November 2, 2016." Counsel received a list of vehicles that were "seized" on or after November 2, 2016. However, this list did not include vehicles that were "held" on November 2, 2016. Counsel has contacted opposing counsel regarding this omission and opposing counsel has explained that this was inadvertent and assured that the omitted information will be provided. Counsel is still awaiting this discovery and will supplement this filing when this information is received. Counsel anticipates that with the passage of time new vehicles will be seized while others will be released or awarded to the state. As this information is provided under Federal Rule 26(e), Counsel will supplement this filing with this discovery as well. However, from the information already provided it appears to be clear that numerosity is met.

Additionally, as Chief Judge Young of the Southern District of Indiana noted when certifying a class challenging a local ordinance:

> [C]lass actions challenging statutes or administrative procedures on constitutional grounds, have been recognized as natural class actions, and inclusion in the class of potentially aggrieved individuals has often been regarded as sufficient to meet the Rule 23(a)(1) impracticability requirement.

*Does v. City of Indianapolis, Indiana*, No: 1:06-cv-865-RLY-WTL, 2006 WL 3365672, at *2 (S.D. Ind. Nov. 20, 2006) (quoting 1 *Newberg on Class Actions* § 3.07, 36-37 (3rd ed.).

The requirement of numerosity is met here.

### 3.    There are questions of law or fact common to the class.

In this case the named Plaintiff and the class are all subject to the loss of their vehicle, without Due Process, due to the same statute. The class is united by the common question of whether the statute is unconstitutional. This satisfies the requirement of Rule 23(a)(2) of the Federal Rules of Civil Procedure that requires a question of law or fact common to the class.

Where a common scheme, applicable to the class, is alleged, commonality is met. *Overka v. American Airlines, Inc.*, 265 F.R.D. 14, 18 (D. Mass. 2010). "[I]n a civil-rights suit . . . commonality is satisfied where the lawsuit challenges a system-wide practice or policy that affects all of the putative class members." *Armstrong v. Davis*, 275 F.3[rd] 849, 868 (9th Cir. 2001). Commonality only requires that Defendants "have engaged in standardized conduct towards members of the proposed class." *Keele v. Wexler*, 149 F. 3d 589, 594 (7th Cir. 1998). In this case, all class members have had their vehicles seized pursuant to the same statute.

This is a common question of law or fact uniting the class.

### 4.    The claims of the plaintiff are typical of those of the class.

Rules 23(a)(3) of the Federal Rules of Civil Procedure requires that the claims of the representative parties be typical of those of the class. This requirement is intertwined with the commonality requirement:

> [t]he commonality and typicality requirement of Rule 23(a) tend to merge. Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so inter-related that the interests of the class-members will be fairly and adequately protected in their absence.

*Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 157 n.13 (1982). In order for this requirement to be met, there need not be identity of interest between the named plaintiff and the class that he seeks to represent; rather, there need only be "sufficient homogeneity of interests." *Sosna v. Iowa*, 419 U.S. 393, 403 n.13 (1975). Additionally, typicality requires that the claims of the plaintiff "not be 'significantly antagonistic' to the claims of the proposed class." *Eatinger v. BP Am. Prod. Co.*, 271 F.R.D. 253, 260 (D. Kan. 2010) (footnote and internal citation omitted). The fundamental inquiry is whether all members of the class would benefit in some way from a judgment favorable to the plaintiff. *See Meisberger v. Donahue*, 245 F.R.D. 627, 631 (S.D. Ind. 2007).

The putative class meets these standards. There is a uniform statute affecting all class members. Therefore, all members of the class would benefit in some way from a judgment favorable to the named Plaintiff in that all class members would be free from the unconstitutional constraints imposed by the statute. *See, e.g., Shepherd v. ASI, Ltd.*, 295 F.R.D. 289, 298 (S.D. Ind. 2013) (Typicality is satisfied where the ruling "would redound to the benefit of all class members.")

The named Plaintiff is, therefore, typical of the class he seeks to represent.

**5.     The requirement of adequacy of representation is satisfied here.**

Rule 23(a)(4) of the Federal Rules of Civil Procedure requires that the class

representative's be such that he can and will vigorously pursue the class's interests as well as his

own. *See, e.g., Streeter v. Sheriff of Cook Co.*, 256 F.R.D. 609, 613 (N.D. Ill. 2009). Jeff

Cardella, lead counsel in this case, is an Adjunct Law School Professor at the IU McKinney

School of Law, has current 1983 litigation pending in the Southern District of Indiana, is

currently working on 1983 litigation with Michael Sutherlin, and has served as lead counsel on

over 25 jury trials. Moreover, the relief that Leroy Washington seeks "is not inconsistent in any

way the interests of the members of the class." *Jones v. Blinznier*, 536 F. Supp. 1181, 1190

(N.D. Ind. 1982). While the defendant's have returned Leroy Washington's vehicle in an

attempt to moot his case, all pertinent facts that Leroy Washington would have been required to

testify to have been stipulated to in the complaint. [Filing No. 22 at 1.] Although the defendants

have returned Leroy Washington's vehicle, the inherently transitory exception applies. "Some

claims are so inherently transitory that the trial court will not have even enough time to rule on a

motion for class certification before the proposed representative's individual interest expires."

*United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 399, 100 S. Ct. 1202, 1210 (1980).

> Where "State officials will undoubtedly continue to enforce the
> challenged statute and yet, because of the passage of time, no
> single challenger will remain subject to its restrictions for the
> period necessary to see such a lawsuit to its conclusion. . . [t]he
> controversy may exist, however, between a named defendant and a
> member of the class represented by the named plaintiff, even
> though the claim of the named plaintiff has become moot."

*Sosna v. Iowa*, 419 U.S. 393, 402, 95 S. Ct. 553, 558-559 (1975).

Additionally, under the relation back doctrine, "in cases in which the named plaintiffs'

individual claims become moot before the district court has a reasonable opportunity to certify a

class . . . certification can be said to 'relate back' to the filing of the complaint." *Zeidman v. J.*

*Ray McDermott & Co.*, 651 F.2d 1030, 1047 (5th Cir. 1981) (internal citations omitted). *See also Olson v. Brown*, 594 F.3d 577, 582-583 (7th Cir. 2010) (The relation back doctrine applies when (1) it is uncertain that any potential named plaintiff in the class would have a live claim long enough for a district court to certify a class, and (2) there will be a constant class of persons suffering the deprivation.) *See also Susman v. Lincoln Am. Corp.*, 587 F.2d 866, 870 (7th Cir. 1978) ("when a motion for class certification has been pursued with reasonable diligence and is then pending before the district court, a case does not become moot merely because" the named plaintiff's case has been resolved.)

The requirement of adequacy of representation is satisfied here.[10]

  **6. The further requirements of Rule 23(b)(1)(B) are also met in this case.**

The further requirements of Rule 23(b)(1)(B) of the Federal Rules of Civil Procedure are met here in that prosecuting separate actions by individual class members would create a risk of adjudications that would be dispositive of the interests of the other members. A single ruling enjoining enforcement of IC § 34-24-1-2(a)(1) as it pertains to vehicles will be dispositive for all persons who own vehicles that are being held pursuant to IC § 34-24-1-2(a)(1).

  **7. The further requirements of Rule 23(b)(2) are also met in this case.**

The further requirements of Rule 23(b)(2) of the Federal Rules of Civil Procedure are met here in that the above named Defendants have acted or refused to act on grounds that apply generally to the class. Specifically, the vehicles have been held without affording the class members a postseizure preforfeiture hearing. Here, the Plaintiff challenges a governmental practice or policy of general applicability. "Rule 23(b)(2) was drafted specifically to facilitate relief in civil rights suits. Most class actions in the constitutional and civil rights areas seek

---

[10] Counsel should therefore be appointed class counsel pursuant to Federal Rule of Civil Procedure 23(g).

primarily declaratory and injunctive relief on behalf of the class and therefore readily satisfy Rule 23(b)(2) class action criteria." *Tyson v. Grant County Sherriff*, No. 1:07-cv-0010, 2007 WL 1395563, at *5 (N.D. Ind. May 9, 2007) (quoting A. Conte & H. Newberg, 8 *Newberg on Class Actions*, § 25.20 (4th ed. 2002)). Consequently, "[t]he requirements of the rule are . . . given a liberal constitution in civil rights suits." *John Does 1-100 v. Boyd*, 613 F. Supp. 1514, 1528 (D. Minn. 1985) (citing *Coley v. Clinton*, 635 F.2d 1364, 1379 (8th Cir. 1980)).

In this case, the alleged unconstitutionality of IC § 34-24-1-2(a)(1) has detrimentally affected and will continue to detrimentally affect the named Plaintiff as well as the members of the putative class. The Plaintiff seeks to enjoin this unconstitutional legislation. The above named Defendants have acted or refused to act on grounds generally applicable to the class.

For the above reasons, this case should be certified as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure with the class as defined as noted above.

## IV.    CONCLUSION

Wherefore, Plaintiff moves that this Court enter judgment declaring that IC § 34-24-1-2(a)(1) violates Due Process, issue a preliminary injunction and permanent injunction enjoining its enforcement, certify this case as a class action, and granting any further relief to which the Court may deem them entitled, including their costs and reasonable attorney fees pursuant to 42 U.S.C. § 1988.

/s/ Jeff Cardella
Jeff Cardella
Atty. No. 27051-49
The Law Office of Jeff Cardella, LLC
333 N. Alabama St. # 357
Indianapolis, IN 46204
Phone: (317) 695-7700
Fax: (317) 454-1334
Email: jeffcardella@cardellalawoffice.com
Web: www.cardellalawoffice.com

Attorney for Plaintiffs

## **CERTIFICATE OF SERVICE**

I hereby certify that on the February 21, 2017, a copy of the foregoing pleading was filed electronically upon the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Jeff Cardella
Jeff Cardella

Jonathan P. Nagy
Office of the Indiana Attorney General
Jonathan.nagy@atg.in.gov

Pamela G. Schneeman. Attorney No. 18142-53
Office of Corporation Counsel
Pamela.Schneeman@indy.gov