UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| LEROY  WASHINGTON on his own behalf, and on behalf of a Class of those similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) | No. 1:16-cv-02980-JMS-DML |
| v. | ) ) ) | |
| MARION COUNTY PROSECUTOR, MAYOR OF THE CONSOLIDATED CITY OF INDIANAPOLIS/MARION COUNTY, CHIEF OF THE INDIANAPOLIS METROPOLITAN POLICE DEPARTMENT, | ) ) ) ) ) ) | |
| Defendants. | ) | |

## **ORDER**

This matter involves a challenge to Indiana's civil forfeiture statute, specifically as it applies to the seizure and pre-forfeiture retention of vehicles.  Plaintiff Leroy Washington, on behalf of himself and a putative class of plaintiffs, contends that Indiana's statute violates the Due Process Clause of the Fifth and Fourteenth Amendments to the United States Constitution.  Mr. Washington argues that the statute allows law enforcement officers to seize and hold vehicles based on  an officer's probable cause determination for up to six months without judicial oversight and without allowing individuals the opportunity to challenge that seizure and deprivation – in other words without a post-seizure, pre-forfeiture hearing.  In his Motion for Summary Judgment, [Filing No. 31], Mr. Washington requests a declaratory judgment that the statute is unconstitutional, and a permanent injunction enjoining Defendants from enforcing the statute.  For the reasons that follow, the Court concludes that Indiana Code Section 34-24-1-1(a)(1), as read in conjunction with the statutory provisions of the same chapter, violates the Due Process Clause of

the Fifth and Fourteenth Amendments. The Court therefore permanently enjoins Defendants from enforcing that statutory provision.

## I.
### BACKGROUND

The facts relevant to the pending motions are as follows.[1] On September 21, 2016, an officer of the Indianapolis Metropolitan Police Department ("IMPD") stopped a car driven and owned by Mr. Washington. [Filing No. 33-1 at 1.] Mr. Washington was ultimately arrested and charged with, among other offenses, dealing in marijuana. [Filing No. 1 at 6.] The officer had Mr. Washington's car towed and held for forfeiture pursuant to Indiana Code Sections 34-24-1-1(a)(1) and 34-24-1-2(a)(1). [Filing No. 31-1.] On November 1, 2016, Washington made a demand for the return of his property pursuant to Indiana Code Section 34-24-1-3. [Filing No. 1 at 7.] Mr. Washington's car has since been returned to him. [Filing No. 29-1 at 6.]

Mr. Washington filed his Complaint in this Court on November 2, 2016, alleging on behalf of himself and a putative class of plaintiffs that Indiana Code Section 34-24-1-2(a)(1) violates the Due Process Clause of the Fifth and Fourteenth Amendments to the United States Constitution. [Filing No. 1 at 1.] Mr. Washington's Complaint seeks a declaratory judgment that Indiana Code § 34-24-1-2(a)(1), read in conjunction with Indiana Code Sections 34-24-1-1 and 34-24-1-3, violates the Constitution, and he requests a permanent injunction enjoining Defendants the Marion County Prosecutor, the Mayor of the Consolidated City of Indianapolis/Marion County, and the Chief of the Indianapolis Metropolitan Police Department (collectively "Defendants") from seizing vehicles pursuant to that statute. [Filing No. 1 at 7.] Mr. Washington then filed a Motion to Certify a Class, [Filing No. 3], and a Motion for Preliminary Injunction, [Filing No. 5], which

---

[1] The parties have stipulated to the facts as recited in the relevant portions of Mr. Washington's Complaint. [Filing No. 22 at 1.]

Defendants oppose, [Filing No. 38; Filing No. 39].  Defendants filed a Motion to Dismiss, [Filing No. 24], which this Court denied, [Filing No. 34].  Mr. Washington filed a Motion for Summary Judgment, [Filing No. 31], and Defendants cross-moved for summary judgment, [Filing No. 40].  This Court ordered Mr. Washington to submit supplemental briefing addressing several issues, and allowed Defendants the opportunity to respond.  [Filing No. 56.]  That briefing has been submitted in accordance with the Court's order.  [Filing No. 57; Filing No. 59; Filing No. 60.]

Therefore, currently pending before the Court are Mr. Washington's Motions for Class Certification, [Filing No. 3], Preliminary Injunction, [Filing No. 5], and Summary Judgment, [Filing No. 31], and Defendants' Cross-Motion for Summary Judgment, [Filing No. 40].

## II.
## CHALLENGED STATUTORY SCHEME

Indiana Code Section 34-24-1-1(a)(1) authorizes the seizure of vehicles "if they are used or are intended for use by the person or persons in possession of them to transport or in any manner facilitate the transportation" of a number of controlled substances, including marijuana, for the purposes of dealing in or manufacturing them.  Ind. Code § 34-24-1-1(a)(1).  That provision authorizes law enforcement officers to seize such vehicles without a warrant if the seizure occurs incident to a lawful arrest or search.  Ind. Code § 34-24-1-2(a)(1).  The government may then hold the vehicle without taking any action for 180 days, or for 90 days after receiving written notice from the owner demanding the vehicle's return.  Ind. Code § 34-24-1-3.  At the end of the applicable time period, the government may file a complaint in the circuit or superior court in the jurisdiction where the seizure occurred for the reimbursement of law enforcement costs and forfeiture, or it may return the property to its owner.  Ind. Code § 34-24-1-3.  While the vehicle is being held, prior to any forfeiture action, the vehicle's owner has no legal ability to challenge the seizure, because replevin is prohibited by the statute.  Ind. Code § 34-24-1-2(c) ("Property that is

seized under subsection (a) … is not subject to replevin but is considered to be in the custody of the law enforcement agency making the seizure.").

Mr. Washington argues that this statutory scheme is unconstitutional because it allows the government to deprive individuals of their vehicles for potentially lengthy periods of time without any ability to contest the deprivation. He asks this Court to issue a declaratory judgment stating that the seizure and holding of vehicles pursuant to Ind. Code § 34-24-1-2(a)(1) violates the Fifth and Fourteenth Amendments to the United States Constitution, and to enter a permanent injunction enjoining Defendants from seizing and holding vehicles pursuant to that provision.[2] [Filing No. 1 at 7.] Defendants respond that the requirements of due process are satisfied by the statute and that no hearing or other process is required during the period of deprivation or prior to the forfeiture hearing. [Filing No. 40.]

### III.
### MOTION FOR CLASS CERTIFICATION

#### A. Legal Standard

In deciding whether to certify a class, the Court may not blithely accept as true even the most well-pleaded allegations of the complaint, but must instead "make whatever factual and legal inquiries are necessary under Rule 23" to resolve contested issues. *Szabo v. Bridgeport Machs., Inc.,* 249 F.3d 672, 676 (7th Cir. 2001). Specifically, the Court must find that the putative class satisfies the four prerequisites set forth in Federal Rule of Civil Procedure 23(a). If the putative class does satisfy these prerequisites, the Court must additionally find that it satisfies the requirements set forth in Federal Rule of Civil Procedure 23(b), which vary depending upon which of three different types of classes is proposed.

---

[2] As described below, the Court construes Mr. Washington's claim as challenging Ind. Code § 34-24-1-1(a)(1), as read in conjunction with the other provisions of that chapter.

The four prerequisites under Rule 23(a) are that: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). Class certification is not appropriate unless the named plaintiff establishes all four prerequisites. *Gen. Tel. Co. of the Southwest v. Falcon,* 457 U.S. 147, 156 (1982). In addition to meeting the prerequisites of Rule 23(a), the proposed class must satisfy one of the conditions of Rule 23(b). *Oshana,* 472 F.3d at 513; *Williams v. Chartwell Fin. Servs.,* 204 F.3d 748, 760 (7th Cir. 2000). Under Rule 23(b)(2), a class action that satisfies Rule 23(a) may be sustained if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

## B. Whether an Identifiable Class Exists

In addition to the class certification prerequisites specifically enumerated in Federal Rule of Civil Procedure 23, it is the plaintiff's burden to prove "that the class is indeed identifiable as a class." *Oshana, 472 F.3d at 513*. The Court addresses that requirement first.

Mr. Washington proposes the following class definition: "All persons who own vehicles that are being held pursuant to IC § 34-24-1-2(a)(1) by the Marion County Prosecutors [sic] Office or the Consolidated City of Indianapolis/Marion County or the Indianapolis Metropolitan Police Department or any agent of the aforementioned Defendants." [Filing No. 4 at 3.] Mr. Washington argues that this class is sufficiently identifiable, because all elements of the proposed class definition refer to objective criteria: (1) vehicle owners, (2) whose vehicles have been seized, (3) pursuant to Indiana Code Section 34-24-1-2(a)(1), (4) by the Defendants. [Filing No. 4 at 4.]

Defendants argue that the class is not sufficiently identifiable because "there are too many factual variables that would have to be determined in order to determine whether persons actually belong in the class." [Filing No. 39 at 8.] As possible variables, Defendants hypothesize individuals who:

- Were held without bond in jail after arrest, and were therefore unable to use the seized vehicle during the 180-day seizure period;

- Were unable to post bail and/or convicted and therefore unable to retake possession of the vehicle; or

- Were "innocent owners" of seized vehicles.

[Filing No. 39 at 8.]

These "variables" are irrelevant to whether the class is identifiable. Mr. Washington claims that the statute at issue violates the Constitution because it allows the Government to seize and hold vehicles for up to 180 days without any form of process during that deprivation. That right to due process, if it exists, applies equally to all individuals whose vehicles are seized under the relevant statute—innocent and non-innocent owners alike. It simply makes no difference whether the individual (because of being incarcerated) could not have made use of the vehicle had additional process been available. The Court agrees with Mr. Washington that the only factual inquiry required by the proposed class definition involves determining whether a vehicle has been seized, by Defendants, pursuant to the relevant statute.

The Court concludes that the definition proposed by Mr. Washington is based upon objective criteria, and it outlines a sufficiently identifiable class.[3]

---

[3] Defendants also contend that Mr. Washington does not fall within the class definition because his car has been returned to him, reiterating the mootness argument they raised, and this Court rejected, in Defendants' Motion to Dismiss, [Filing No. 39 at 9 (citing Filing No. 24)]. The Court addresses this argument in detail below, but restates here its conclusion that Mr. Washington's claim was not rendered moot by the return of his vehicle.

**C. Federal Rule of Civil Procedure 23(a)**

*1. Numerosity*

The Court can only certify a class that "is so numerous that joinder of all members is impracticable." Fed. R. Civ. Pro. 23(a)(1). "Although there is no 'bright line' test for numerosity, a class of forty is generally sufficient to satisfy Rule 23(a)(1)." *McCabe v. Crawford & Co.,* 210 F.R.D. 631, 644 (N.D. Ill. 2002); *Hubler Chevrolet, Inc. v. GMC Corp.,* 193 F.R.D. 574, 577 (S.D. Ind. 2000).

The parties agree that at least 169 vehicles have been seized by Defendants pursuant to the statute at issue. [Filing No. 33-2.] The Court readily finds that a class size of at least 169 members would make joinder of the parties impracticable and is sufficient to satisfy Rule 23(a)(1).

*2. Commonality and Typicality*

Mr. Washington argues that commonality is satisfied because all of the class members were subject to the same course of conduct—that their vehicles have been seized and held without a post-seizure, pre-forfeiture hearing in violation of their and Fifth and Fourteenth Amendment due process rights. [Filing No. 4 at 7.] He argues that the class members share a common question of law, which is whether the challenged forfeiture statute is unconstitutional. [Filing No. 4 at 7.] Because they share these common issues of law and fact, Mr. Washington argues, he also shares a "sufficient homogeneity of interests" to meet the typicality requirement. [Filing No. 4 at 8.] Defendants argue that "Washington has not brought forth any facts to corroborate the lack of postseizure preforfeiture relief for any other members of the putative class—only that they had their vehicles seized." [Filing No. 39 at 11.] And Defendants reiterate their argument that factual and legal distinctions among the class members, including Mr. Washington, render him unable to meet the typicality requirement. [Filing No. 39 at 12-13.]

A class action requires "questions of law or fact common to the class," Fed. R. Civ. Pro. 23(a)(2), and the plaintiff's claims or defenses must be "typical of the claims or defenses of the class[,]" Fed. R. Civ. Pro. 23(a)(3). Commonality is satisfied when there is a "common nucleus of operative fact," that is, a "common question which is at the heart of the case." *Rosario v. Livaditis,* 963 F.2d 1013, 1018 (7th Cir. 1992) (citation omitted). All questions of fact or law need not be identical; rather, the requirement is satisfied as long as the class claims arise out of the same legal or remedial theory. *In re Ready-Mixed Concrete Antitrust Litig.,* 261 F.R.D. 154, 167 (S.D. Ind. 2009). The commonality and typicality requirements tend to merge because both "serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of the Southwest v. Falcon,* 457 U.S. 147, 158 n. 13 (1982). Although typicality may exist even if there are factual distinctions between the claims of the named plaintiffs and other class members, the requirement "directs the district court to focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at large." *Muro v. Target Corp.,* 580 F.3d 485, 492 (7th Cir. 2009) (citation omitted). Commonality requires "that the class members have suffered the same injury," *Jamie S.,* 668 F.3d at 497, and typicality requires that the plaintiff's claims or defenses must be "typical of the claims or defenses of the class[,]" Fed. R. Civ. Pro. 23(a)(3).

Regarding Defendants' argument that Mr. Washington has not alleged that others, like him, did not receive a post-seizure, pre-forfeiture hearing, the Court concludes that it can reasonably infer that had any such hearings taken place, Defendants would have disclosed them in their answers to Mr. Washington's interrogatories. Moreover, Defendants dedicate much of their

summary judgment briefing to arguing why no such hearings are required, and why they would be detrimental to the government's interest. That position is inconsistent with the government having actually provided many or any individuals with post-seizure, pre-forfeiture hearings.

Here, Mr. Washington's claim arises out of the same event or course of conduct as the class members' claims—*i.e.,* Defendants' seizure of their vehicles pursuant to Ind. Code Section 34-24-1-1(a)(1) *et seq*. And, as discussed above, the factual distinctions cited by Defendants are not relevant to either Mr. Washington's due process claim or the class certification.

The Court concludes that the commonality and typicality requirements have been satisfied.

*3. Adequacy of Representation*

Mr. Washington argues that he is an adequate class representative, because he has suffered the same injury as other members of the class. [Filing No. 4 at 9-10.] Defendants argue that Mr. Washington has not sufficiently alleged that he is an adequate representative, particularly in light of the fact that his vehicle has now been returned to him, and based on their characterization of the nature of his claim. [Filing No. 39 at 14.] Defendants do not contest that Mr. Washington's counsel would provide adequate representation.

Federal Rule of Civil Procedure 23(a)(4) requires the Court to find that "the representative parties will fairly and adequately protect the interests of the class." The adequacy inquiry is composed of two parts: "the adequacy of the named plaintiff's counsel, and the adequacy of representation provided in protecting the different, separate, and distinct interest[s] of the class members." *Retired Chicago Police Ass'n v. City of Chicago,* 7 F.3d 584, 598 (7th Cir. 1993) (citation and quotation omitted). To adequately represent the class, the representative plaintiff "must be part of the class and possess the same interest and suffer the same injury as the class

members." *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 625 (1997) (citation and quotation omitted).

The Court has no basis to find that Mr. Washington's counsel will not pursue the class's interests, and counsel has experience litigating these types of cases. As to the adequacy of Mr. Washington as a class representative, the Court notes that the parties agree that Mr. Washington's vehicle has been returned to him. [Filing No. 39 at 14; Filing No. 44 at 12.] The Court has already concluded that this does not moot Mr. Washington's class claim, but the Court still must evaluate Mr. Washington's commitment to serving as the class representative, now that his vehicle has been returned. Mr. Washington's car was released to him after the filing of his class certification motion, but before his reply brief was filed. In his original class certification brief, Mr. Washington hypothesized that Defendants might attempt to moot his claim by returning his vehicle to him. [Filing No. 4 at 9.] Mr. Washington argued that the inherently transitory exception to the mootness doctrine would apply under such circumstances, and he insisted that he would remain an adequate class representative. [Filing No. 4 at 9-10.] In his reply, Mr. Washington reiterated his argument regarding the inherently transitory exception to the mootness doctrine. [Filing No. 44 at 12-13.]

Mr. Washington could have been clearer and more explicit in his briefing that, even though his vehicle has been returned to him, he will continue to vigorously represent the interests of the class. But the Court notes that since the return of his vehicle, Mr. Washington has continued to diligently pursue this case, including timely filing supplemental briefing ordered by the Court. Under these circumstances, the Court concludes that Mr. Washington remains an adequate class representative.

**D. Federal Rule of Civil Procedure 23(b)**

Where, as here, a proposed class satisfies all the prerequisites of Federal Rule of Civil Procedure 23(a), class certification is appropriate if the class qualifies as one of the types listed under subsection (b). Mr. Washington argues, and the Court agrees, that the proposed class fits within Fed. R. Civ. P. 23(b)(2), in that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Because this action seeks injunctive relief to prevent future allegedly illegal deprivations of civil rights, it is a "prime example[ ]" of a proper class under Rule 23(b)(2). *Amchem,* 521 U.S. at 614 (citation omitted); *see also Doe v. Guardian Life Ins. Co.,* 145 F.R.D. 466, 477 (N.D. Ill. 1992) ("[T]he primary limitation on the use of Rule 23(b)(2) is the requirement that injunctive or declaratory relief be the predominant remedy requested for the class members.").

**E. Proposed Class Definition**

The Court notes that a district court has broad discretion to certify a class and may modify a proposed class definition if modification will render the definition adequate. *Davis v. Hutchins,* 321 F.3d 641, 649 (7th Cir. 2003). The Court exercises its discretion to modify slightly Mr. Washington's proposed class definition in order to address the appropriate breadth of the class. Mr. Washington's proposed class definition is as follows:

> All persons who own vehicles that have been seized and are being held pursuant to IC § 34-24-1-2(a)(1) by the Marion County Prosecutors [sic] Office or the Consolidated City of Indianapolis/Marion County or the Indianapolis Metropolitan Police Department or any agent of the aforementioned Defendants.

[Filing No. 4 at 3.] Throughout his briefing, Mr. Washington makes clear that he challenges the operation of the statute as a whole, including, but not limited to, Ind. Code §§ 34-24-1-1(a)(1) and 34-24-1-3. Therefore, the Court defines the class as follows:

All persons who own vehicles that have been seized and held pursuant to Indiana Code § 34-24-1-1 *et seq.* by the Marion County Prosecutor's Office, the Consolidated City of Indianapolis/Marion County, the Indianapolis Metropolitan Police Department, or any agent of those entities who were not afforded a post-seizure, pre-forfeiture hearing.

The Court therefore grants Mr. Washington's Motion to Certify a Class, [Filing No. 3], as modified above.

## IV.
### CROSS-MOTIONS FOR SUMMARY JUDGMENT

**A. Legal Standard**

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). As the current version of Rule 56 makes clear, whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. P. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the Court need only consider disputed facts that are material to the decision. A disputed fact is material if it might affect the outcome of the suit under the governing law. *Hampton v. Ford Motor Co.*, 561 F.3d 709, 713 (7th Cir. 2009). In

other words, while there may be facts that are in dispute, summary judgment is appropriate if those facts are not outcome determinative.  *Harper v. Vigilant Ins. Co.*, 433 F.3d 521, 525 (7th Cir. 2005).  Fact disputes that are irrelevant to the legal question will not be considered.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events.  *Johnson v. Cambridge Indus.*, 325 F.3d 892, 901 (7th Cir. 2003).  The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party.  *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009).  The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor.  *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008).  It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder.  *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011).  The Court need only consider the cited materials, *Fed. R. Civ. P. 56(c)(3)*, and the Seventh Circuit Court of Appeals has "repeatedly assured the district courts that they are not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them," *Johnson*, 325 F.3d at 898.  Any doubt as to the existence of a genuine issue for trial is resolved against the moving party.  *Ponsetti v. GE Pension Plan*, 614 F.3d 684, 691 (7th Cir. 2010).

"The existence of cross-motions for summary judgment does not, however, imply that there are no genuine issues of material fact."  *R.J. Corman Derailment Servs., LLC v. Int'l Union of Operating Engineers*, 335 F.3d 643, 647 (7th Cir. 2003).  Specifically, "[p]arties have different burdens of proof with respect to particular facts; different legal theories will have an effect on which facts are material; and the process of taking the facts in the light most favorable to the non-

movant, first for one side and then for the other, may highlight the point that neither side has enough to prevail without a trial." *Id.* at 648. Put another way, cross-motions for summary judgment do not waive the right to a trial and, instead, are treated separately. *McKinney v. Cadleway Properties, Inc.*, 548 F.3d 496, 504 (7th Cir. 2008).

**B. Facial or As-Applied Challenge**

Mr. Washington's initial briefing did not specify whether he raises a facial or an as-applied challenge to the constitutionality of the subject statute, and this Court ordered supplemental briefing in order to clarify that issue. [Filing No. 56.] In that briefing, Mr. Washington stated that he is raising a challenge to the statute's constitutionality as applied to vehicle owners. [Filing No. 57 at 2.]

In considering the specifics of the challenge raised by Mr. Washington, and in particular the relief he seeks, the Court concludes that Mr. Washington is attempting to raise a facial challenge, but only insofar as the statute applies specifically to vehicles. The Court suspects that Mr. Washington is confused as to the proper means by which to challenge the portion of the statute applying specifically to vehicles. For example, Mr. Washington's Complaint initially singles out Ind. Code Section 34-24-1-2(a)(1)—the provision allowing for, among other things, the seizure of property incident to a lawful arrest, the maintenance of that property under seal, and the prohibition on replevin. But it is clear from the Complaint and the rest of Mr. Washington's briefing that he also challenges Ind. Code Section 34-24-1-1(a)(1), the provision that applies specifically to the seizure of vehicles. The Court, therefore, construes Mr. Washington's claim as a facial challenge to Ind. Code Section 34-24-1-1(a)(1), read in conjunction with the statutory provisions of that chapter. *See, e.g., Six Star Holdings, LLC v. City of Milwaukee*, 821 F.3d 795, 803 (7th Cir. 2016) ("Because the distinction between facial and as-applied challenges informs only the choice of

remedy, not what must be pleaded in the complaint, a court may construe a challenge as applied or facially, as appropriate.") (internal citation and quotation omitted).

### C. Mootness[4]

In their Cross-Motion for Summary Judgment, Defendants argue that Mr. Washington's claim has been rendered moot, divesting this Court of subject-matter jurisdiction. [Filing No. 40 at 5-6.] Defendants contend that because Mr. Washington's vehicle has been returned to him, he no longer has an active case or controversy. [Filing No. 40 at 5-6.] Mr. Washington responds that his claim falls within the "inherently transitory" exception to the mootness doctrine, and has therefore not been mooted by the return of his vehicle. [Filing No. 45 at 4.] The Court addresses this argument first, as subject matter jurisdiction is a threshold issue.

Defendants rely heavily on *Alvarez v. Smith*, 558 U.S. 87 (2009), to support their mootness argument. [Filing No. 40 at 5-7.] In that case, six individuals filed suit against various government officials in Illinois, alleging that those defendants violated the Due Process Clause by seizing the plaintiffs' vehicles and/or cash, without affording them a post-seizure, pre-forfeiture hearing. *Alvarez*, 558 U.S. at 90. The district court denied the plaintiffs' motion to certify a class, and the plaintiffs did not appeal that denial. *Id.* at 91. The plaintiffs then proceeded on an individual basis against the defendants. *Id.*

The defendants moved to dismiss the plaintiffs' claims on the basis that "the Constitution does not require any procedure prior to the actual forfeiture proceeding." *Id.* The district court granted the defendants' motion, and the plaintiffs appealed. *Id.* On appeal, the Seventh Circuit

---

[4] The Court notes that it has already addressed this argument in its order, [Filing No. 34], regarding Defendants' Motion to Dismiss, [Filing No. 24]. Defendants do not cite the Court's prior order, and they do not address why that order would not constitute law of the case here. However, to the extent that Defendants attempt to argue that the Court's prior ruling was legally erroneous, the Court addresses in greater detail why Defendants' mootness claim fails.

reversed the district court, concluding that "the procedures set out in the Illinois statute show insufficient concern for the due process rights of the plaintiffs," and that "some sort of mechanism to test the validity of the retention of the property is required." *Id.* The defendants appealed the Seventh Circuit's reversal, and the Supreme Court granted certiorari. *Id.* While those appeals were pending, the State returned the seized vehicles, and the plaintiffs reached various settlement agreements with the State regarding the seized cash. *Id.* at 92. Without reaching the merits, the Supreme Court concluded that because there was no longer any live dispute over the seized property, there was no longer an actual case or controversy subject to adjudication, and therefore that the plaintiffs' claims were moot. *Id.* The Supreme Court also concluded that the "capable of repetition while evading review" exception to the mootness doctrine did not apply. *Id.* at 93-94.

Defendants contend that *Alvarez* dictates the outcome here and that the Court must conclude that it lacks jurisdiction. [Filing No. 40 at 5.] However several key facts differentiate the circumstances present here. The Court concludes that, for two reasons, *Alvarez* does not control: (1) the *Alvarez* plaintiffs were individuals, and not members of a class; and (2) *Alvarez* did not involve the application of the "inherently transitory" exception to the mootness doctrine.

The *Alvarez* plaintiffs were denied class certification, and they proceeded individually. Therefore, each plaintiff raised a claim only regarding his or her individual property and did not seek to represent the interests of other unnamed plaintiffs whose property had not yet been returned. Here, Washington seeks to represent the interests of all persons subject to the seizure of vehicles, and his class certification motion is currently pending before this Court. [Filing No. 3.] As the *Alvarez* court noted, class plaintiffs could continue to dispute ownership of seized property. *Alvarez*, 558 U.S. at 92-93 ("The plaintiffs point out that they sought certification of a class. And a class might well contain members who continue to dispute ownership of seized property.")

While that possibility was foreclosed in *Alvarez*, due to the denial of class certification, the same is not true here.

The Seventh Circuit addressed a similar circumstance in *Olson v. Brown*, 594 F.3d 577, 583 (7th Cir. 2010). *Olson* involved claims raised by a putative class of plaintiffs who were inmates of the Tippecanoe County jail in Indiana. *Olson*, 594 F.3d at 579-80. The named plaintiff Olson was transferred to another jail after filing his complaint, and the district court subsequently dismissed his claim as moot. *Id.* at 579-80. The Seventh Circuit reversed that dismissal, concluding that Olson:

> …seeks to keep the claim alive beyond his individual claim to certify the class. If the district court certifies the class, the case can proceed to the merits for the certified class of plaintiffs. The *Alvarez* plaintiffs, through their inaction in response to the denial of class certification, conceded that their claims should not extend beyond the life of their individual claims.

*Id.* at 583-84. The court concluded that "[t]he difference in procedural postures of the two cases makes *Alvarez* inapplicable to the case at hand." *Id.* at 584. The Court finds that this case mirrors *Olson,* and it follows the Seventh Circuit's conclusion that *Alvarez* is inapplicable here.

Second, while the Supreme Court in *Alvarez* concluded that the "capable of repetition yet evading review" exception to the mootness doctrine did not apply, it did not consider whether the "inherently transitory" exception applied. *Alvarez*, 558 U.S. at 93. As the Seventh Circuit has repeatedly held, the "inherently transitory" and "capable of repetition yet evading review" exceptions are distinct, with different required showings. *Olson*, 594 F.3d at 583; *see also, Banks v. Nat'l Collegiate Athletic Ass'n*, 977 F.2d 1081, 1085-86 (7th Cir. 1992). To satisfy the "capable of repetition yet evading review" exception, a plaintiff must show that *he personally* would again be subject to the complained-of conduct sometime in the future. *Olson,* 594 F.3d at 583. A plaintiff seeking to invoke the inherently transitory exception, however, need not make such a showing. *Id.* Instead, he must establish that (1) it is uncertain that a claim will remain live for any

individual who could be named as a plaintiff long enough for a court to certify the class; and (2) there will be a constant class of persons suffering the deprivation complained of in the complaint. *Id.* Put otherwise, the "capable of repetition yet evading review" exception requires a plaintiff to show that *he* risks being subjected again to the offending behavior, while the "inherently transitory" exception requires a showing that *someone* within the plaintiff class will suffer the complained-of conduct. Washington does not invoke the "capable of repetition yet evading review" exception, and instead invokes the "inherently transitory" exception.

The Court concludes (as it did in its order denying Defendants' Motion to Dismiss) that Washington has established that the inherently transitory doctrine applies here. First, it is uncertain that a claim will remain live for any individual who could be named as a plaintiff long enough for a court to certify the class. The statute itself limits the pre-forfeiture period to 180 days. As the procedural history of this case illustrates, despite a district court's best efforts to provide prompt resolution to all pending matters, the realities of a district court's docket and case load (along with the possibility that the parties may need additional time to conduct discovery related to class certification) may result in motions to certify being unresolved for longer than 180 days. In this case, Washington's Motion to Certify a Class was filed on November 2, 2016—more than 180 days before the issuance of an order resolving it. [Filing No. 3.] And, as the State retains discretion to return the seized property to its owner at any time, it could attempt to moot any named plaintiff's claim by simply returning the property after the plaintiff files a motion to certify.[5] Second, there will be a constant class of persons suffering the deprivation complained of in the Complaint. Defendants have not indicated any intention to cease enforcement of the statute, and Defendants

---

[5] Precisely that scenario occurred in this case. [*See* Filing No. 34.]

do not dispute that at least 169 vehicles have been seized for forfeiture between November 2, 2016 and February 13, 2017. [Filing No. 33 at 3-9.]

The Court therefore concludes, as it did at the motion to dismiss stage, that Washington's claim was not rendered moot by the return of his vehicle. The Court retains jurisdiction over this dispute.

### D. Due Process Challenge

*1. Due Process and Forfeiture: Background*

Mr. Washington argues that the statutory scheme created by Ind. Code §§ 34-24-1-1 *et seq.* violates the Due Process Clauses of the Fifth and Fourteenth Amendments, because it allows the government to seize and hold vehicles for an extended period of time without giving the owner an opportunity to challenge the deprivation. [Filing No. 32 at 5; Filing No. 57 at 1-2.] Defendants respond that only a forfeiture hearing is required, and therefore the statutory scheme does not offend the Constitution. [Filing No. 40 at 3-5.]

The Due Process Clause of the Fifth Amendment, incorporated to the states by the Fourteenth Amendment, provides that "[n]o person shall…be deprived of life, liberty, or property without due process of law." U.S. Const. Am. V. The Supreme Court has established "the general rule that individuals must receive notice and an opportunity to be heard before the Government deprives them of property." *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 48-49 (1993) (citing *United States v. $8,850,* 461 U.S. 555, 562, n. 12 (1983); *Fuentes v. Shevin,* 407 U.S. 67, 82 (1972); *Sniadach v. Family Finance Corp. of Bay View,* 395 U.S. 337, 342 (1969) (Harlan, J., concurring); *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 313 (1950)). However the Supreme Court has concluded that, in some "extraordinary" situations, the lack of preseizure notice and hearing does not offend due process. *See Good Real Prop.*, 510 U.S. at 53.

In *Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663 (1974), the Supreme Court considered a case involving the seizure of moveable property. In that case, Puerto Rican authorities discovered marijuana on a yacht that was being leased by two Puerto Rican residents. *Id.* at 665. Several months later, pursuant to a Puerto Rican statute that authorized the seizure and forfeiture of vessels that had been used to transport controlled substances, law enforcement seized the vessel without prior notice to either the lessee or the owner, Pearson Yacht Leasing Company. *Id.* at 665-66. No adversarial hearing was held regarding the seizure. *Id.* at 666. Within ten days after the seizure, the lessees were given notice of the forfeiture, as mandated by the statute, and they did not challenge the seizure. *Id.* The yacht was then forfeited to the Government of Puerto Rico. *Id.* Pearson learned of the forfeiture while attempting to repossess the yacht from the lessees. *Id.*

Pearson filed suit, seeking a declaratory judgment that the Puerto Rican statutory scheme unconstitutionally denied it due process, insofar as the statute authorized law enforcement to seize the yacht without notice or an adversary proceeding. *Id.* at 668. The government argued that while preseizure notice and a hearing would normally be required by due process, this type of pre-forfeiture seizure fell within the limited circumstances in which a seizure would be constitutionally permissible without either of those procedural safeguards. *Id.* at 678. The Supreme Court reasoned that "preseizure notice and hearing might frustrate the interests served by the statutes, since the property seized—as here, a yacht—will often be of a sort that could be removed to another jurisdiction, destroyed, or concealed, if advance warning of confiscation were given." *Id.* at 679. The Court held that "[i]n these circumstances, we hold that this case presents an 'extraordinary' situation in which postponement of notice and hearing until after seizure did not deny due process." *Id.* at 679-80.

In *Good Real Property*, the Supreme Court addressed the pre-forfeiture seizure of real property. Defendant Good pled guilty in state court to a drug offense after various marijuana products and drug paraphernalia were discovered in his home. *Good Real Property*, 339 U.S. at 46. Several years later, the federal government sought to initiate civil forfeiture proceedings against Good's home, pursuant to a federal statute permitting forfeiture of real property when that property was used to commit or facilitate the commission of a drug offense. *Id.* at 47. The government obtained an *in rem* warrant to seize the property, which was issued by a magistrate judge in an *ex parte* proceeding. *Id.* The government subsequently seized the property without prior notice to Good or an adversary hearing. *Id.*

Good challenged the seizure, arguing that it deprived him of his property without due process of law. *Id.* The government contended that the seizure was lawful, arguing "that it afforded Good all the process the Constitution requires." *Id.* The government argued that "the seizure of real property under the drug forfeiture laws justifies an exception to the usual due process requirement of preseizure notice and hearing." *Id.* at 49. As in *Calero-Toledo*, the Supreme Court reiterated that due process "tolerate[s] some exceptions to the general rule requiring predeprivation notice and hearing, but only in extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event." *Good Real Property,* 510 U.S. at 53 (internal citation and quotations omitted).

The Court applied the test developed in *Mathews v. Eldridge,* 424 U.S. 319, 96 (1976), in order to determine whether the deprivation at issue involved such an "extraordinary situation." *Good Real Property*, 510 U.S. at 53. That analysis requires the court "to consider the private interest affected by the official action; the risk of an erroneous deprivation of that interest through the procedures used, as well as the probable value of additional safeguards; and the Government's

interest, including the administrative burden that additional procedural requirements would impose." *Id.* at 53 (citing *Mathews,* 424 U.S. at 335).  Applying this balancing test, the Court held in favor of Good, concluding that:

> [i]n sum, based upon the importance of the private interests at risk and the absence of countervailing Government needs, we hold that the seizure of real property under § 881(a)(7) is not one of those extraordinary instances that justify the postponement of notice and hearing.  Unless exigent circumstances are present, the Due Process Clause requires the Government to afford notice and a meaningful opportunity to be heard before seizing real property subject to civil forfeiture.

*Good Real Property,* 510 U.S. at 53.

In *United States v. $8,850,* 461 U.S. 555 (1983), decided ten years before *Good Real Property*, the Supreme Court considered a challenge to the timing of a civil forfeiture proceeding itself.  That case involved an individual's failure to report U.S. currency to officials as she entered the country.  *$8,850,* 461 U.S. at 557.  Under the federal statutory scheme in place at that time, individuals entering the country with more than $5,000 in U.S. currency were required to file a report with the U.S. Customs Service ("Customs") declaring the amount of money being transported.  *Id.*  Customs officials were authorized to seize any monetary instruments for which a report was not filed.  *Id.*  Under the statutes and regulations followed by Customs, they would notify any person "who appears to have an interest in the seized property of the property's liability to forfeiture and of the claimant's right to petition the Secretary of the Treasury for remission or mitigation of the forfeiture."  *Id.*  If a claimant did not file a petition, then the Customs officer was required to prepare a full report of the seizure, which was then sent to the United States Attorney.  *Id.* at 557-58.  And finally:

> [u]pon receipt of a report, the United States Attorney is required 'immediately to inquire into the facts' and, if it appears probable that a forfeiture has been incurred, 'forthwith to cause the proper proceedings to be commenced and prosecuted, without delay.'  After a case is reported to the United States Attorney for institution of legal proceedings, no administrative action may be taken on any petition for remission or mitigation.

*Id.* at 558 (citing 19 U.S.C. § 1604; 19 CFR § 171.2(a)).

The currency at issue was seized in September 1975, and a complaint seeking forfeiture was not filed until March 1977, a temporal gap of nearly eighteen months. The claimant argued that the government's delay in filing a civil forfeiture proceeding "violated her due process right to a hearing at a meaningful time." *$8,850,* 461 U.S. at 562 (internal citation and quotation omitted). The Court applied a test articulated in *Barker v. Wingo,* 407 U.S. 514 (1972), originally formulated to evaluate claims raised pursuant to the Sixth Amendment right to a speedy trial. *$8,850,* 461 U.S. at 564. The Court reasoned that, while that test did not deal specifically with claims arising under the Fifth Amendment's due process right:

> …the Fifth Amendment claim here—which challenges only the length of time between the seizure and the initiation of the forfeiture trial—mirrors the concern of undue delay encompassed in the right to a speedy trial. The *Barker* balancing inquiry provides an appropriate framework for determining whether the delay here violated the due process right to be heard at a meaningful time.

*Id.* at 564. That test involved "a weighing of four factors: length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Id.* Applying the *Barker* test, the Court concluded that the balance of factors "indicate[d] that the Government's delay in instituting civil forfeiture proceedings was reasonable," and that no due process violation occurred. *Id.* at 569-70.

### 2. *Proper Evaluative Framework*

Mr. Washington argues that this Court should, as the Supreme Court did in *Good Real Property*, apply the *Mathews* test to determine whether the statutory scheme complies with the requirements of due process. [Filing No. 32 at 5.] Defendants suggest instead that *$8,850* is analogous, and that the Court should apply the *Barker* speedy trial test as the Supreme Court did in that case. [Filing No. 40 at 4.] Each party contends that, regardless of which test applies, summary judgment should be granted in their favor. [Filing No. 40 at 4; Filing No. 45 at 9-13.]

Defendants characterize the issue in this case as one of timing—*i.e.*, how quickly a forfeiture hearing must occur, post-seizure, in order to satisfy the demands of due process. That characterization is in line with the facts of *$8,850*, in which the claimant specifically challenged the government's eighteen-month delay between the seizure of her property and the filing of a civil forfeiture action. But, unlike in *$8,850*, Mr. Washington does not challenge the timing of a forfeiture hearing or the propriety of forfeiture proceedings. Instead, he challenges the statutory scheme as enabling the deprivation of property without any process or opportunity to challenge that deprivation, prior to the forfeiture hearing.

The Seventh Circuit addressed precisely this question in *Smith v. City of Chicago,* 524 F.3d 834 (7th Cir. 2008), *vacated and remanded sub nom. Alvarez v. Smith*, 558 U.S. 87 (2009). While that case was later vacated on mootness grounds, as discussed above, by the Supreme Court's decision in *Alvarez,* the Court notes that it is not deciding this issue in a vacuum and should look to and may benefit from the Seventh Circuit's reasoning in that case. The Seventh Circuit concluded that *Good Real Property* and the *Mathews* framework—not the *Barker* test employed in *$8,850*—provided the proper analytical framework for evaluating an almost identical Illinois civil forfeiture statute. The court reasoned that *$8,850* and the *Barker* test "concern[] the speed with which the civil forfeiture proceeding itself is begun—a different question from whether there should be some mechanism to promptly test the validity of the seizure." *Smith*, 524 F.3d at 837. The *Smith* court also pointed to the Second Circuit's decision in *Krimstock v. Kelly*, 306 F.3d 40 (2nd Cir. 2002), addressing another nearly identical forfeiture statute, as supporting its conclusion. In that case, the Second Circuit concluded that:

> [t]he application of the speedy trial test presumes prior resolution of any issues involving probable cause to commence proceedings and the government's custody of the property or persons *pendente lite,* leaving only the issue of delay in the proceedings. The impoundment of property—or the incarceration of a criminal

defendant—certainly increases the hardship worked by any delay. The Constitution, however, distinguishes between the need for prompt review of the propriety of continued government custody, on the one hand, and delays in rendering final judgment, on the other.

*Krimstock*, 306 F.3d at 68.

The Court agrees with the circuit courts' reasoning in both *Smith* and *Krimstock*. This is a process case, not a timing case. The Court concludes, as did the Supreme Court in *Good Real Property,* that the *Mathews* test provides the proper framework, under the circumstances present here, to evaluate the statutory scheme.[6]

*3. Application of Mathews Factors*

Having concluded that the *Mathews* test provides the proper evaluative framework, the Court turns next to application of that test. That analysis requires the court "to consider the private interest affected by the official action; the risk of an erroneous deprivation of that interest through the procedures used, as well as the probable value of additional safeguards; and the Government's interest, including the administrative burden that additional procedural requirements would impose." *Good Real Property,* 510 U.S. at 53 (citing *Mathews,* 424 U.S. at 335). The Court considers each factor in turn.

*a. Private Interest*

The Court first considers the private interest that is impacted by Defendants' conduct. The deprivation of property, both real and personal, implicates substantial due process interests. *See,*

---

[6] The Court notes that the Supreme Court also apparently viewed *$8,850* and *Good Real Property* as addressing different issues, at least insofar as the due process inquiry was concerned. Writing after *$8,850* was decided, the Supreme Court stated that "[w]hether *ex parte* seizures of forfeitable property satisfy the Due Process Clause is a question we last confronted in *Calero-Toledo v. Pearson Yacht Leasing Co. ...* which held that the Government could seize a yacht subject to civil forfeiture without affording prior notice or hearing." *Good Real Property*, 510 U.S. at 52.

*e.g., Good Real Property,* 510 U.S. at 53-54 (stating "essential principle" that "[i]ndividual freedom finds tangible expression in property rights"); *Fuentes v. Shevin*, 407 U.S. 67, 85-86, 97-98 (1972) (concluding that replevin of household furniture and appliances requires prior hearing and stating that even a "temporary, nonfinal deprivation of property is nonetheless a 'deprivation' in the terms of the Fourteenth Amendment").

Vehicles are a particularly important form of personal property, and their "particular importance derives from their use as a mode of transportation, and, for some, the means to earn a livelihood." *Krimstock*, 306 F.3d at 61; *see also, Coleman v. Watt,* 40 F.3d 255, 260-61 (8th Cir. 1994) (stating that "[a]utomobiles occupy a central place in the lives of most Americans, providing access to jobs, schools, and recreation as well as to the daily necessities of life"); *Stypmann v. City & County of San Francisco,* 557 F.2d 1338, 1342-43 (9th Cir. 1977) (finding a "substantial" interest in the "uninterrupted use of an automobile," upon which the owner's "ability to make a living" may depend); *Brown v. State*, 653 N.E.2d 77, 80 n.3 (Ind. 1995) ("It is, however, particularly important, in the state which hosts the Indy 500 automobile race, to recognize that cars are sources of pride, status, and identity that transcend their objective attributes. We are extremely hesitant to countenance their casual violation, even by law enforcement officers who are attempting to solve serious crimes."). A vehicle's importance as a means to earn a living and participate in the activities of daily life is particularly pronounced in Indiana, where public transportation options are limited, even in the state's largest cities. *See, e.g.,* https://indygobus.wpengine.com/wp-content/uploads/2017/05/system_web.pdf, last accessed August 10, 2017 (map of available Indianapolis bus routes).

Other considerations also impact the private interests at stake. *See Krimstock*, 306 F.3d at 61. First, the statute allows for a lengthy time period to pass between the seizure of a vehicle and

the forfeiture proceedings. Following a seizure, the government may hold a vehicle without taking any action for 180 days, or for 90 days after receiving written notice from the owner demanding the vehicle's return. Ind. Code § 34-24-1-3. During this timeframe, the owner of the property has no ability to challenge the seizure, because replevin is prohibited by the statute. Ind. Code § 34-24-1-2(c) ("Property that is seized under subsection (a) … is not subject to replevin but is considered to be in the custody of the law enforcement agency making the seizure.").

Therefore, three to six months may elapse, during which time the owner is deprived of the use of his vehicle, and the government is not required to take any action whatsoever regarding the seized property. It is particularly problematic that the statute specifically bars replevin. Absent another statutorily created mechanism to challenge the deprivation, replevin would provide a vehicle owner's only recourse. But that avenue has been specifically foreclosed by the statute. During those months, if the owner has secured financing to purchase the vehicle, he is still required to make payments on that loan, lest he risk foreclosure and repossession. He is also required, of course, to make other arrangements for his transportation needs, which may include fundamental life activities such as transit to a job or school, visits to health care professionals, and caretaking for children or other family members. It is evident to this Court that a three- to six-month deprivation is a lengthy one, and could cause significant hardship to the individual whose vehicle is seized.

Even a "temporary, nonfinal deprivation of property is nonetheless a 'deprivation' in the terms of the Fourteenth Amendment," *Fuentes*, 407 U.S. at 85-86, and it follows that the longer the deprivation, the more heavily it weighs in the balance. In *Krimstock*, the Second Circuit concluded that a delay of up to twenty-five days permitted by a similar statute offended the Due Process Clause. *Krimstock*, 306 F.3d at 54. And as the *Krimstock* court highlighted, many state

forfeiture statutes provide individuals with an early opportunity to challenge the government's probable cause for seizing property "or the legitimacy of its retaining seized property during the pendency of proceedings." *Krimstock*, 304 F.3d at 54 (citing Fla. Stat. § 932.703(2)(1)).  Indiana's does not.  Florida's forfeiture statute, for example, allows individuals to request an "adversarial preliminary hearing after the seizure to determine whether probable cause exists to believe that such property has been or is being used in violation of the Florida Contraband Forfeiture Act." Fla. Stat. Ann. § 932.703(3)(a).  An individual's inability to challenge the propriety of the seizure leaves him with no means to shorten the period of deprivation.

Second, unlike some states' statutes, Indiana's forfeiture provisions do not allow for interim relief during the pendency of proceedings.  Such interim relief could include returning the seized vehicle subject to the posting of a surety bond or other adequate security.  *See* Fla. Stat. § 932.703(3)(d) ("…the court shall order the property restrained by the least restrictive means to protect against disposal, waste, or continued illegal use of such property pending disposition of the forfeiture proceeding.  The court may order the claimant to post a bond or other adequate security equivalent to the value of the property.")  The absence of an opportunity for interim relief particularly burdens individuals who lack the financial resources to secure another vehicle during the pendency of proceedings, or who are unable to access reliable public transportation.

The private interests at stake are strong, and the statute imposes a heavy burden on those interests.  This factor weighs heavily in favor of the individual whose property is subject to seizure.

### b. *Risk of Erroneous Deprivation and Probable Value of Additional Safeguards*

The second factor to be considered under the *Mathews* analysis is "the risk of an erroneous deprivation of such interest through the procedures used, as well as the probable value, if any, of additional safeguards." *Mathews*, 424 U.S. at 335.

The Court highlights that under the challenged statutory scheme, the only process that an individual receives prior to a forfeiture hearing is a law enforcement officer's determination that probable cause exists for an arrest. No warrant need be issued, there is no review by a neutral factfinder regarding the propriety of the initial seizure, and there is no judicial determination of probable cause for the seizure. In order to be eligible for forfeiture, the vehicle's involvement in illegal activity must be more than incidental or fortuitous, but there is no chance to address this requirement until the forfeiture hearing. This is particularly problematic in light of the fact that the statute allows law enforcement to seize vehicles of individuals who are entirely unconnected with the conduct that gave rise to the arrest. *See Krimstock,* 306 F.3d at 53. And the statute includes no provisions that would enable those "innocent owners" to challenge the deprivation during the pendency of proceedings. The risk of erroneous deprivation is particularly high for these individuals.

Moreover, as the Supreme Court observed in *Good Real Property,* procedural safeguards are of "particular importance…where the Government has a direct pecuniary interest in the outcome of the proceeding." *Good Real Property,* 510 U.S. at 55-56. Under Indiana Code Section 34-24-1-4(c), in the event that property is forfeited, the property is returned to the law enforcement agency that seized it.. The court ordering forfeiture "may permit the agency to use the property for a period not to exceed three (3) years." *Id.* Or the property may be sold in a public sale, with the proceeds divided, pursuant to the statute, between the seizing law enforcement agency and the common school fund. Ind. Code § 34-24-1-4(C), (D). Here, the government has a direct pecuniary interest in the outcome of the forfeiture proceeding, which weighs in favor of affording robust procedural safeguards.

Under these circumstances, the Court concludes that the risk of erroneous deprivation is high, and additional procedural safeguards would indeed be valuable.

### c. *The Government's Interest*

The final *Mathews* factor evaluates "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail." *Mathews*, 424 U.S. at 335. The Government has a strong interest in ensuring that vehicles subject to seizure are not removed to another jurisdiction, concealed, or destroyed prior to the forfeiture proceedings. [Filing No. 40 at 9.] Defendants point to *Calero-Toledo* as dictating the outcome in this case, arguing that the risk of losing the subject vehicles is too great to justify the provision of any procedural safeguards.

The Court, however, reiterates that Mr. Washington does not seek a declaration that the Government may not hold vehicles, pending seizure proceedings. Instead, he seeks the *opportunity* to challenge the propriety of the continued deprivation. First, as the *Krimstock* court explained, "[t]he critical difference between *Calero–Toledo* and the present case is that plaintiffs' vehicles have already been seized and are in the hands of the police. Just as with real property seized by the government in forfeiture proceedings, there is no danger that these vehicles will abscond." *Krimstock*, 306 F.3d at 65. Second, Mr. Washington, like the plaintiffs in *Krimstock*, seeks a determination "only of whether *continued* retention" of his vehicle "is valid and justified." *Id.* In some cases, of course, continued retention will be justified due to the risk that an individual would attempt to conceal or abscond with the vehicle. However, "[c]ontinued retention may be unjustified when other means of restraint would accomplish the City's goals." *Id.* (citing *Good Real Property*, 510 U.S. at 59). In many cases, the Government may well have "various means, short of seizure, to protect its legitimate interests in forfeitable property," such as requiring a

claimant to post a bond, "or a court could issue a restraining order to prohibit the sale or destruction of the vehicle." *Krimstock*, 306 F.3d at 65. As the *Krimstock* court concluded, "[t]he need to prevent forfeitable property from being sold or destroyed during the pendency of proceedings does not necessarily justify continued retention of all vehicles when other means of accomplishing those goals are available." *Id.*

The Court acknowledges that requiring a post-seizure hearing would impose an additional administrative burden, but as the Court noted in *Smith*, due process always imposes some burden on governmental actors. *See Smith,* 524 F.3d at 838. And the government already has experience with conducting post-arrest probable-cause hearings. For example, when an individual is arrested (a seizure of a different variety) without a warrant, a probable cause hearing must take place following the arrest. *See* Ind. Code § 35-33-7-2(a) (providing that when a person has been arrested without a warrant, "the facts upon which the arrest was made shall be submitted to the judicial officer, ex parte, in a probable cause affidavit").

### d. *Balancing the Mathews Factors*

As described above, and as the courts did in *Smith*[7] and *Krimstock*, the Court concludes that the private interest and risk of erroneous deprivation factors, on balance, outweigh any

---

[7] The Court notes that, following the vacatur of the Seventh Circuit's opinion in *Smith*, the Illinois legislature amended the forfeiture statute, adding a provision allowing for the preliminary review of a pre-forfeiture seizure. That provision requires that "[w]ithin 14 days of the seizure, the State shall seek a preliminary determination from the circuit court as to whether there is probable cause that the property may be subject to forfeiture." 725 Ill. Comp. Stat. 150/3.5(c).

Regarding vehicles, the provision provides as follows:

(e) For seizures of conveyances, within 7 days of a finding of probable cause under subsection (a), the registered owner or other claimant may file a motion in writing supported by sworn affidavits claiming that denial of the use of the conveyance during the pendency of the forfeiture proceedings creates a substantial hardship. The court shall consider the following factors in determining whether a substantial hardship has been proven:

governmental interest.  The balance of *Mathews* factors demonstrates that due process requires that individuals be provided with some sort of mechanism through which to challenge whether continued deprivation is justifiable.  This is not one of those "extraordinary situations" in which

---

(1) the nature of the claimed hardship;
(2) the availability of public transportation or other available means of transportation; and
(3) any available alternatives to alleviate the hardship other than the return of the seized conveyance.

If the court determines that a substantial hardship has been proven, the court shall then balance the nature of the hardship against the State's interest in safeguarding the conveyance. If the court determines that the hardship outweighs the State's interest in safeguarding the conveyance, the court may temporarily release the conveyance to the registered owner or the registered owner's authorized designee, or both, until the conclusion of the forfeiture proceedings or for such shorter period as ordered by the court provided that the person to whom the conveyance is released provides proof of insurance and a valid driver's license and all State and local registrations for operation of the conveyance are current. The court shall place conditions on the conveyance limiting its use to the stated hardship and restricting the conveyance's use to only those individuals authorized to use the conveyance by the registered owner. The court shall revoke the order releasing the conveyance and order that the conveyance be reseized by law enforcement if the conditions of release are violated or if the conveyance is used in the commission of any offense identified in subsection (a) of Section 6-205 of the Illinois Vehicle Code

If the court orders the release of the conveyance during the pendency of the forfeiture proceedings, the registered owner or his or her authorized designee shall post a cash security with the Clerk of the Court as ordered by the court. The court shall consider the following factors in determining the amount of the cash security:
(A) the full market value of the conveyance;
(B) the nature of the hardship;
(C) the extent and length of the usage of the conveyance; and
(D) such other conditions as the court deems necessary to safeguard the conveyance.

If the conveyance is released, the court shall order that the registered owner or his or her designee safeguard the conveyance, not remove the conveyance from the jurisdiction, not conceal, destroy, or otherwise dispose of the conveyance, not encumber the conveyance, and not diminish the value of the conveyance in any way. The court shall also make a determination of the full market value of the conveyance prior to it being released based on a source or sources defined in 50 Ill. Adm. Code 919.80(c)(2)(A) or 919.80(c)(2)(B).  725 Ill. Comp. Stat. Ann. 150/3.5.

the Constitution tolerates an exception to the general rule requiring a predeprivation hearing. *See Good Real Property,* 510 U.S. at 53.

### E. Remedy

Mr. Washington requests a declaratory judgment that Ind. Code Section 34-24-1-1(a)(1), as read in conjunction with other statutory provisions, is unconstitutional. [Filing No. 1.] He also requests a permanent injunction, enjoining Defendants from enforcing the statute—*i.e.*, seizing and holding vehicles without providing individuals with an opportunity to challenge the seizure or deprivation. [Filing No. 1.] Defendants object to the issuance of an injunction, arguing that it would constitute a rewriting of the statute—a practice which they argue this Court should avoid. [Filing No 59 at 4.]

For reasons already discussed, the Court concludes that the statutory provisions allowing for the seizure and retention of vehicles without providing an opportunity for an individual to challenge the pre-forfeiture deprivation are unconstitutional. The Court need not "rewrite" the statute in order to enjoin Defendants from enforcing an unconstitutional state statute. *See Buquer v. City of Indianapolis,* 2013 WL 1332158, *16 (S.D. Ind. 2013) (enjoining enforcement of Indiana statute held to violate the Fourth Amendment). The Court is mindful that the drafting of forfeiture laws is the responsibility of the Indiana General Assembly, and this Court will not attempt a constitutional rewrite of the statute.[8] But it is this Court's responsibility to adjudicate the constitutionality of a law when properly presented with the question.

---

[8] Throughout its analysis, the Court has identified a variety of methods that Defendants could implement in order to satisfy the demands of due process, including, at a minimum, providing individuals with a timely post-seizure, pre-forfeiture hearing. The Court has also identified several state statutes that contain procedural safeguards aimed at providing adequate due process.

## V.
### CONCLUSION

For the reasons described above, the Court **GRANTS** Mr. Washington's Motion to Certify a Class, [Filing No. 3], as modified.

The Court **GRANTS** Mr. Washington's Motion for Summary Judgment, [Filing No. 31]. It concludes that Indiana Code Section 34-24-1-1(a)(1), read in conjunction with Indiana Code provisions of the same chapter, violates the Due Process Clause of the Fifth and Fourteenth Amendments. The Defendants are hereby **PERMANENTLY ENJOINED** from enforcing Indiana Code Section 34-24-1-1(a)(1), as read in conjunction with Indiana Code provisions of the same chapter. The Defendants are hereby further ordered to inform forthwith all other affected Indiana state governmental entities of this injunction.

The Court **DENIES** Defendants' Cross-Motion for Summary Judgment, [Filing No. 40].

In light of this ruling, Mr. Washington's Motion for Preliminary Injunction, [Filing No. 5], is **DENIED AS MOOT**.

Final Judgment shall issue accordingly.

Date: 8/18/2017

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

Jonathan Paul Nagy
INDIANA ATTORNEY GENERAL
jonathan.nagy@atg.in.gov

Jeffrey R. Cardella
LAW OFFICE OF JEFF CARDELLA LLC
jeffcardella@cardellalawoffice.com

Pamela G. Schneeman
OFFICE OF CORPORATION COUNSEL
pamela.schneeman@indy.gov

Benjamin J Legge
OFFICE OF THE ATTORNEY GENERAL
benjamin.legge@atg.in.gov